UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>JUNIPER NETWORKS, INC.<br><br>Defendant. | Civil Action No.:  6:20-cv-00812-ADA<br>6:20-cv-00813-ADA<br>6:20-cv-00814-ADA<br>6:20-cv-00815-ADA<br>6:20-cv-00816-ADA<br>6:20-cv-00902-ADA<br>6:20-cv-00903-ADA<br><br>**JURY TRIAL DEMANDED** |

**JUNIPER NETWORKS, INC.'S OPPOSED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................1
II. FACTUAL BACKGROUND ................................................................................................2
    A. Plaintiff Has No Real Connection to This District. ...................................................2
    B. Juniper's Witnesses and Sources of Proof Are Primarily in The Northern District of California ...............................................................................................3
    C. Several Third Party Witnesses are Located in The Northern District of California ...................................................................................................................5
III. LEGAL STANDARD ...........................................................................................................5
IV. ARGUMENT .........................................................................................................................6
    A. Venue Is Proper In The Northern District of California ...........................................6
    B. The Private Factors Support Transfer .......................................................................6
        i. Cost of Witness Attendance Heavily Favors Transfer .................................6
        ii. Access to Sources of Proof Strongly Favors Transfer .................................8
        iii. Ability to Compel Third-Party Witnesses Favors Transfer .......................10
        iv. Other Practical Considerations is Neutral ..................................................10
    C. The Public Factors Support Transfer ......................................................................11
        i. Administrative Difficulties Supports Transfer ...........................................11
        ii. Local Interest Strongly Favors Transfer ....................................................12
        iii. The Familiarity of the Forum is Neutral ....................................................14
        iv. Conflict of Laws or Application of Foreign Law is Neutral ......................14
V. CONCLUSION ....................................................................................................................14

# **TABLE OF AUTHORITIES**

<u>Page</u>

## **Cases**

*Fintiv, Inc. v. Apple, Inc.*,
   No. 6:18-cv-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ...................... 10

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) ........................................................................................ 11

*Hammond Dev. Int'l, Inc. v. Google LLC*,
   No. 1:20-cv-00342-ADA, 2020 WL 3452987 (W.D. Tex. June 24, 2020) ....................... 12

*In re Adobe, Inc.*,
   823 F. App'x. 929 (Fed. Cir. 2020) ........................................................................ 1, 6, 11

*In re Apple Inc.*,
   No. 2020-135, 2020 WL 6554063 (Fed. Cir. Nov. 9, 2020) ..................................... passim

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 6, 7, 8, 9

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ..................................... 5, 9, 10

*In re Hoffman-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ........................................................................................ 12

*In re Tech USA Corp.*,
   551 F.3d 1315 (5th Cir. 2008) ........................................................................................ 5, 8

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) .......................................................................................... 5, 6

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................................................ 5

*Noble v. Geo Group, Inc.*,
   2008 WL 2609208 (W.D. Tex. 2008) ............................................................................... 6

*Parus Holdings Inc. v. LG Electronics Inc.*,
   No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) .................. passim

*Polaris Innovations Ltd. v. Dell, Inc.*,
   No. 16-cv-451-XR, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) .................................. 12

*Uniloc USA Inc. v. Box, Inc.*,
   No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ............................. 12

*Vassallo v. Goodman Networks, Inc.*,
    No. 5:14-cv-743-DAE, 2015 WL 502313 (W.D. Tex. Feb. 5, 2015) ............................... 13

*VLSI Tech. LLC v. Intel Corp.*,
    No. 6:19-cv-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019) ........................... 5

*XY, LLC v. Trans Ova Genetics, LC*,
    No. 16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ............................. 12

## **Statutes**

28 U.S.C. § 1400(b) ................................................................................................................ 6

28 U.S.C. § 1404(a) ............................................................................................................ 4, 5

## **Rules**

Local Rule CV-5 .................................................................................................................. 16

Local Rule CV-7(i) .............................................................................................................. 16

**I.     INTRODUCTION**

This case should be transferred to the Northern District of California. Indeed, the facts in this case present a more compelling case for transfer to the Northern District of California than those in *In re Adobe, Inc.*, 823 F. App'x. 929 (Fed. Cir. 2020) and *In re Apple Inc.,* No. 2020-135, 2020 WL 6554063 (Fed. Cir. Nov. 9, 2020), where the Federal Circuit ordered transfer of the underlying cases to the Northern District of California.

The center of gravity of this dispute is undeniably the Northern District of California. That is where Juniper Networks, Inc. ("Juniper") has its headquarters, where it researches, develops, and markets its products (including those accused here), where the vast majority of relevant financial, marketing, and technical documents are located, and where the greatest concentration of witnesses with knowledge relevant to this case are based. In stark contrast, the only tie this District appears to have is a small Waco office that Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") apparently established in February 2020, ostensibly for the purpose of managing its patent litigation activities in this District.

Because the overwhelming majority of the relevant documents and witnesses are located in the Northern District of California, the Northern District of California is clearly a more convenient forum in which to try this case. The courts in *In re Adobe, In re Apple*, and *Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) found the same factors weighed in favor of transfer and ordered those cases transferred to the Northern District of California. Given that this case presents a stronger case for transfer than those cases, Juniper respectfully requests that the Court transfer this case to the Northern District of California.[1]

---

[1]   Brazos asserted seven patents against Juniper in seven different cases. For the Court's and the parties' convenience, Juniper brings a single motion covering all seven cases.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Has No Real Connection to This District.

Brazos is a Delaware corporation.[2]  Dkt. No. 1 ("Complaint"), ¶ 2.[3]  Brazos's website describes itself as a patent assertion entity, offering patent-related services including "Licensing and Monetization" and "Litigation."  Briggs Decl., Ex. A.  Brazos asserts that its principal place of business is in Waco, Texas (Complaint, ¶ 2), but does not seem to conduct any business from that office or anywhere else in Texas.  Indeed, the assignment agreement by which Brazos (named as WSOU on the agreement) received much of its patent portfolio list WSOU's address as being in Los Angeles.  Briggs Decl., Ex. B.  Nor do most of Brazos's officers seem to have any connection to this District or to Texas.  Brazos's website lists four officers: Craig Etchegoyen (Chairman and Founder), Aaron Garvey (Head of Finance), Stuart A. Shanus (President), and Matt Hogan (Business Development).  *Id.*, Ex. C.  Per LinkedIn, only one of the four is based in Texas.  Mr. Etchegoyen has two LinkedIn profiles, one reflecting that he is in Hawaii and the other reflecting that he is in Newport Beach, California; Mr. Garvey appears to be based in New York; Mr. Shanus seems to be in Los Angeles; and only Mr. Hogan claims to be in Texas.  *Id.*, Exs. D-H.  Brazos does not identify any employees working in its purported Waco office or any work it does from that office.  In sum, whatever ties Brazos has to this District appear to have been created for the purpose of its patent litigation activities in this District.

---

[2]  Brazos is the d/b/a pseudonym of WSOU.  Both are Delaware corporations.  WSOU registered to do business in Texas in January 2020 and shortly thereafter indicated it would do business as Brazos.  Juniper will refer to WSOU/Brazos as "Brazos" throughout this motion.
[3]  References to docket numbers herein are to the docket in Case No. 6:20-cv-00812-ADA.

      **B.**      **Juniper's Witnesses and Sources of Proof Are Primarily in The Northern District of California**

Juniper is also a Delaware corporation. Juniper's headquarters and principal place of business are in Sunnyvale, California, located in the Northern District of California and indeed just over 10 miles from the San Jose federal courthouse. Martinez Decl., ¶¶ 2-3. The vast majority of Juniper employees work at its headquarters in Sunnyvale: roughly 2,800 Juniper employees work there, while only about 40 work in the Western District of Texas on matters that are unrelated to this case. *Id*., ¶¶ 2, 13-14.

Brazos accuses Juniper's QFX Series Switches, EX Series Switches, MX Series 5G Universal Routing Platform, NFX Series Network Services Platform, SRX Series Services Gateways, WANDLIP/MPLSView, ACX Series Universal Metro Routers, Packet Optical products, Packet Optical Transport products, and PTX3000 and PTX5000 Series routers ("Accused Products") of infringing the Asserted Patents. Juniper's technical research and development teams for each of the Accused Products run primarily out of its Sunnyvale headquarters, with support in some cases from employees in China and/or India. *Id*., ¶ 5-6. Juniper designed and developed the Accused Products primarily in its Sunnyvale offices. *Id.*, ¶ 5.

Juniper has identified several employees knowledgeable about the design, development, testing, and/or operation of the Accused Products. Of these employees, four (Sanjeev Mahajan, Ravi Torvi, Jon Anderson, and Selvakumar Sivaraj) work in Sunnyvale, California. *Id*., ¶ 7.[4] Juniper's sales and marketing teams are also based in Sunnyvale. *Id*., ¶ 10. Mike Marcellin (Juniper's Chief Marketing Officer) and Shelly Gupta (its Vice President of Finance) are based

---

[4] Juniper has also identified one employee knowledgeable about the design, development, testing, and/or operation of the Accused Products who works in New Jersey and four who work in Bangalore, India. *Id.*, ¶¶ 8-9.

out of the Sunnyvale office and are knowledgeable about the marketing and sales of the Accused Products. *Id*.

Conversely, Juniper is not aware of any employees in Texas with relevant knowledge of the Accused Products. *Id.*, ¶¶ 11, 13-14. Juniper's Texas operations are very limited and have virtually nothing to do with the Accused Products. The Austin Juniper office Brazos identifies (Complaint, ¶¶ 3, 8) exists mostly to serve a small company that Juniper acquired in 2019. Martinez Decl., ¶ 13. That company, called Mist, does not design or develop (or do anything else with) any of the Accused Products. *Id.*, ¶ 13. Juniper also has a few Support Engineers based in Austin, as well as in many other locations throughout the United States. *Id.*, ¶ 14. These Support Engineers, many of whom worked from home even pre-pandemic, provide initial technical support for customers anywhere in the U.S. who call about problems with any Juniper product. *Id.*, ¶¶ 13-14. Their supervisors are in California and, when they cannot resolve a customer's concern, they route the problem to Juniper's Engineering team in Sunnyvale. *Id*. Support Engineers are not specific to any product and have no particular knowledge or expertise with the Accused Products, and there is no reason to believe they will have any information relevant to this litigation. *Id*.

Additionally and unsurprisingly, Juniper stores the vast majority of its technical documents and source code (including for the Accused Products) at its headquarters in Sunnyvale. *Id.*, ¶ 12. Juniper will likely make its source code available for inspection in this case at its Sunnyvale headquarters. *Id.* Juniper stores no source code or technical documents in Texas. *Id.* Documents concerning the sales, costs, and marketing of the Accused Products are also stored in Sunnyvale. *Id*. Juniper has identified no witnesses with knowledge of, or documents relevant to, the marketing and sales of the Accused Products that are in Texas. *Id.*, ¶¶ 6, 11-12.

### C. Several Third Party Witnesses are Located in The Northern District of California

Juniper has identified several prior art witnesses in the Northern District of California. Briggs Decl., ¶ 10. These witnesses include Silicon Valley companies like Cisco, Hewlett-Packard, Futurewei, LinkedIn, IBM (which is headquartered in New York but has a large office in San Jose), and Newisys. *Id.* All told, Juniper has thus far located six prior art witnesses in the Northern District of California. *Id.*

### III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A case should be transferred when the proposed forum is "clearly more convenient" than the plaintiff's chosen venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). "Clearly more convenient" is a lower bar than the "substantially more convenient" standard used in *forum non conveniens* dismissal motions. *Id.* at 313-314.

Courts in the Fifth Circuit analyze motions to transfer by weighing four "private factors" and four "public factors." The four private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."[5] *Id.* The four public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized disputes decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4)

---

[5] "A plaintiff's choice of venue" is ***not*** a distinct factor in the analysis of a motion to transfer. *In re Tech USA Corp.*, 551 F.3d 1315, 1320 (5th Cir. 2008) (citation omitted).

the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* No one factor is dispositive (*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)), but the convenience of and cost to witnesses is generally considered the most important. *Parus Holdings,* 2020 WL 4905809, at *5; *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-cv-00254-ADA, 2019 WL 8013949, at *4 (W.D. Tex. Oct. 7, 2019); *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017).

## IV.   ARGUMENT

### A.   Venue Is Proper In The Northern District of California

As a threshold matter, these lawsuits "might have been brought" in the Northern District of California. 28 U.S.C. § 1404(a). In a patent case, venue is proper in the district where the defendant resides, as well as a district where the defendant is alleged to have committed its acts of infringement and has a regular and established place of business. 28 U.S.C. § 1400(b). Juniper has a regular and established place of business (indeed its principal place of business) in Sunnyvale, California. Martinez Decl., ¶ 2. That is also where the alleged acts of infringement—Juniper's design, testing, marketing, and sales of the Accused Products—happened. *Id.*, ¶ 5. Venue is thus proper in the Northern District of California.

### B.   The Private Factors Support Transfer

In this case, two of the four private factors weigh heavily in favor of transfer, one supports transfer, and one is neutral. As a whole, then, the private factors strongly support transfer. *In re Apple*, 2020 WL 6554063, at *4-*8 (transfer warranted where access to sources of proof and cost of witness attendance weighed in favor of transfer); *In re Adobe*, 823 F. App'x at 931-32 (similar).

#### i.   Cost of Witness Attendance Heavily Favors Transfer

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Parus Holdings,* 2020 WL

4905809, at *5; *Noble v. Geo Group, Inc.*, No. A-07-CA-968 LY, 2008 WL 2609208, *5 (W.D. Tex. 2008) ("The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to § 1404(a)").

The further distance from home "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Volkswagen AG*, 371 F.3d at 205. The Fifth Circuit's "100-mile rule" thus provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. at 204-05.

Here, as discussed *infra* at 3, the party witnesses are overwhelmingly based in the Northern District of California at Juniper's Sunnyvale headquarters. Martinez Decl., ¶¶ 7, 10. This puts them approximately 11 miles from the San Jose federal courthouse, 40 miles from the federal courthouse in San Francisco, 41 miles from the federal courthouse in Oakland, and over 1,700 miles from this Court. *Id.*, ¶ 3. Some of Juniper's engineers with relevant knowledge of the Accused Products are in New Jersey or India (*id.*, ¶¶ 8-9), but that does not change the analysis for two reasons. First, courts considering this factor ask not whether "*all* of the witnesses" reside in the transferee district, but whether a "substantial number" are based there. *Genentech*, 566 F.3d at 1345 (emphasis in original); *see also In re Apple*, 2020 WL 6554063, at *6-*7 (finding this factor weighed in favor of transfer where "most relevant party witnesses are located in NDCA"). Here it is clear that a substantial number of Juniper witnesses are in the Northern District of California. Second, that district is still much more convenient than this one for Juniper employees based in neither district because of the greater ease of travel from New Jersey or India to San

Francisco or San Jose compared to Waco. It is not clear what if any relevant Brazos witnesses will need to be called at trial, but it appears that most Brazos officers do not live or work primarily in Texas. Briggs Decl., Exs. D-H. Juniper has also identified six non-party (prior art) witnesses in the Northern District of California. *Id.*, ¶ 10.

In sum, there are a large number of relevant witnesses in the Northern District of California, none in the Western District of Texas, and some in other states or overseas, for all of whom the Northern District of California is more convenient. On balance, then, the convenience of witnesses—the most important factor in assessing a motion to transfer—strongly favors transfer. In *Adobe*, the Federal Circuit held that this factor favored transfer to N.D. Cal because the moving party "identified a significant number of its own employees as potential witnesses who reside in the Northern District of California," while the Plaintiff's employees would be "coming from outside both districts." 823 F. App'x at 931. Likewise, in *In re Apple*, this factor favored transfer because "most relevant party witnesses are located in NDCA." 2020 WL 6554063, at *6-*7. So too here.

    ii.  <u>Access to Sources of Proof Strongly Favors Transfer</u>

The next private factor requires courts to consider "where the parties store documentary evidence, such as documents and physical evidence." *Parus Holdings*, 2020 WL 4905809, at *2. While much of modern patent discovery is conducted electronically, the physical location of relevant documents remains important. *Id.* at *3; *see also In Re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). The location of the defendant's documents dominates this analysis: because "the bulk of the relevant evidence usually comes from the accused infringer," "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345 (internal quotation marks omitted). Indeed, the *Genentech* court found that the district court "clearly erred" in finding that this factor was neutral where "the

petitioners identified all of its [sic] evidence in California," and "no evidence [was] housed within the state of Texas." *Id.* at 1345-1346. "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the [transferring] district." *In re Apple*, 2020 WL 6554063, at *5.

Here, "the bulk of the relevant evidence" will come from Juniper, *see Genentech*, 566 F.3d at 1345, and virtually all of that evidence is in the Northern District of California. The vast majority of the physical and documentary evidence related to the Accused Products, as well as the relevant source code, is stored at Juniper's headquarters in Sunnyvale, California. Martinez Decl., ¶ 12. This is true of Juniper's technical documents as well as marketing and sales information. *Id.* In contrast, none of Juniper's relevant technical documents or marketing and sales information is in Texas. *Id.* Nearly all of the relevant Juniper witnesses—both those with knowledge of the design and development of the Accused Products and those familiar with their sales and marketing—are also in Sunnyvale and, while a few may be in New Jersey or India, none is in Texas. *Id.*, ¶¶ 6-11. The location of these employees alone tips the balance in favor of transfer. *In re Google*, 2017 WL 977038, at *3 (reversing denial of a motion to transfer where the "vast majority of [the petitioner's] employees—in particular those responsible for projects relating to the accused products—work[ed] and reside[d] in the Northern District of California.").

In sum, the fact that Juniper's evidence is almost entirely in California tips this factor heavily in favor of transfer. *Genentech*, 566 F.3d at 1345. That is particularly true because there is no countervailing interest with respect to the location of Brazos's evidence. If Brazos has any relevant evidence, there is no reason to think it will be found in Texas. As discussed *infra* at 2, only one of Brazos's officers seems to be based in Texas—and at least one is in California—and

it listed an address in California on the assignment agreement by which it acquired much of its patent portfolio. It is unclear what if any business Brazos actually conducts out of its Waco office or what relevant documents it keeps there. And even if Brazos could identify some potentially relevant documents it keeps in Texas, that would not outweigh the fact that Juniper's documents are overwhelmingly in the Northern District of California. *See In re Apple*, 2020 WL 6554063, at *5 ("the movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer. Nor is this factor neutral merely because some sources of proof can be identified in the district."). The Northern District of California thus provides clearly superior access to the sources of proof that will determine the outcome of this case. As a result, this factor strongly supports transfer.

      iii.    <u>Ability to Compel Third-Party Witnesses Favors Transfer</u>

The next private factor favors transfer. "In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc. v. Apple, Inc.*, No. 6:18-cv-00372-ADA, 2019 WL 4743678, at *5 (W.D. Tex. Sept. 10, 2019). Here, Juniper has identified six prior art witnesses in the Northern District of California. Briggs Decl., ¶ 10. The ability of courts in that District to subpoena those prior art witnesses pushes this factor in favor of transfer.

      iv.    <u>Other Practical Considerations is Neutral</u>

This Court and the courts in the Northern District of California are equally capable of hearing this case, and there are no other practical considerations that weigh in favor of keeping it here instead of sending it there. The seven patent cases Brazos has filed against Juniper are in reality a single seven-patent infringement suit, which for some reason Brazos chose to file separately as one case per patent. That does not cut against transfer in the slightest. *In re Google*, 2017 WL 977038, at *2 ("Based on the district court's rationale, therefore, the mere co-pendency

of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits. This cannot be correct."); *see also Parus Holdings*, 2020 WL 4905809, at *7 (same). And Juniper is concurrently filing motions to transfer each of Brazos/WSOU's seven suits against it to the Northern District of California. Should the Court grant those motions as well as this one, all seven suits (which, again, are really one seven-patent infringement suit) will still be in the same district, and there will be no efficiency concerns from related cases being in different courts. *See id.* ("In considering the presence of co-pending litigation, the Court must also consider the presence of co-pending motions to transfer."). Thus, this factor is neutral.

### C. The Public Factors Support Transfer

In this case, one of the public factors strongly favors transfer, one favors transfer, and two are neutral. On balance, then, the public factors also support transfer. *In re Apple*, 2020 WL 6554063, at *8-*10 (finding transfer warranted where administrative difficulties and the local interest supported transfer).

#### i. Administrative Difficulties Supports Transfer

The first public factor, administrative difficulties created by court congestion, supports transfer. This factor "concerns whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe*, 823 Fed. App'x at 932 (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) for the proposition that "[t]he real issue is … whether a trial may be speedier in another court because of its less crowded docket."). "To the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved." *In re Apple*, 2020 WL 6554063, at *8 (citation and internal quotation marks omitted).

Certainly neither courts in this District nor in the Northern District of California often complain that their dockets are too light. But on balance, this Court is slightly more congested

than is the Northern District of California—and it is certainly not less so.  In 2019, this District averaged a time to trial of 27.9 months in civil cases—just under six months slower than the 22.3-month average in the Northern District of California.  *See* Federal Court Management Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.  While courts in both districts are busy and congested, the somewhat higher level of congestion in this District favors transfer.  *In re Apple*, 2020 WL 6554063, at *8 (error to find this factor weighed against transfer given that "NDCA has historically had a *shorter* time to trial for patent cases than WDTX.") (internal quotation marks omitted; emphasis in original).

        ii.        Local Interest Strongly Favors Transfer

The second public factor, the public's interest in having disputes decided in the appropriate venue, requires courts to weigh the relative interests of the venues in adjudicating the dispute.  *In re Apple*, 2020 WL 6554063, at *9.  This factor weighs heavily in favor of transfer where, as here, there are significant connections between a venue and the events that gave rise to the suit.  *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  Importantly, the inquiry is "not merely the parties' significant connections to each forum writ large," but instead the "significant connections between a particular venue and *the events that gave rise to a suit*."  *In re Apple*, 2020 WL 6554063, at *9 (internal quotation marks omitted; emphasis in original).  Unsurprisingly, "[t]he district where a party has its principal place of business typically has a stronger local interest in the adjudication of the case."  *XY, LLC v. Trans Ova Genetics, LC*, No. 16-CA-00447-RP, 2017 WL 5505340, at *9 (W.D. Tex. Apr. 5, 2017); *see also Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451-XR, 2016 WL 7077069, at *11 (W.D. Tex. Dec. 5, 2016) ("[A] headquarters in a certain location gives that location a strong local interest.").  Even when a defendant has "a large number of employees in both districts"—which, as discussed *infra* at 3-4, Juniper does not—the "local interest" favors transfer if the defendant "researched, designed, and developed the accused

functionality" in the transferee district. *Hammond Dev. Int'l, Inc. v. Google LLC*, No. 1:20-cv-00342-ADA, 2020 WL 3452987, at *5 (W.D. Tex. June 24, 2020).

Here, the Northern District of California has a far stronger local interest in the case. Juniper's principal place of business is there, along with its leadership and the vast majority of its employees. Martinez Decl., ¶ 2. The Accused Products were "researched, designed, and developed" (and tested, marketed, and sold) out of Juniper's Sunnyvale headquarters (*see id.*, ¶¶ 5-6), which militates strongly in favor of transfer. *Hammond*, 2020 WL 3452987, at *5.

This District, on the other hand, has no meaningful connection to the case. None of the research, design, development, marketing, or sales of the Accused Products took place in this District. Martinez Decl., ¶¶ 5-6. Juniper has only a few employees here, none of whose employment relates to the Accused Products or and none of whom have any particular knowledge about the Accused Products. *Id.*, ¶¶ 11-14. While Juniper does have an office in Austin, that office largely exists to service Mist, the startup Juniper bought in 2019 and which has no connection to the Accused Products. *Id.* The mere presence of an office in this District carries "little weight in the absence of any indication that the events giving rise to [the] suit occurred here."[6] *Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *5 (W.D. Tex. Feb. 5, 2015). As a result, the local interest in the dispute strongly favors transfer.

---

[6] While Brazos apparently has an office in Waco and asserts that that office is its principal place of business (Complaint, ¶ 2), that office does not in fact appear to be its principal place of business in any meaningful sense. Only one of its officers appear to work there (Briggs Decl., Exs. D-H) and Brazos has identified no business operations that are based there. And Brazos listed a California address on the patent assignment form by which it acquired much of its patent portfolio. *Id.*, Ex. B. But even if Brazos does conduct some business out of its Waco office, the acts giving rise to the lawsuit all occurred in the Northern District of California and none occurred in the Western District of Texas. *In re Apple*, 2020 WL 6554063, at *9 (inquiry is "not merely the parties' significant connections to the forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*.") (internal quotation marks omitted, emphasis in original).

### iii. The Familiarity of the Forum is Neutral

The third public interest factor, the familiarity of the forum with the law that will govern the case, is neutral. The Western District of Texas and the Northern District of California are equally familiar with, and equally capable of applying, U.S. patent law.

### iv. Conflict of Laws or Application of Foreign Law is Neutral

The fourth public interest factor, the avoidance of unnecessary problems of conflict of laws or in the application of foreign law, is also neutral. There is no reason to expect this case to present conflict of law issues, and there will certainly be no need to apply foreign law.

## V. CONCLUSION

For the foregoing reasons, Juniper respectfully asks that the Court grant its motion and transfer the case to the Northern District of California.

DATED:  November 25, 2020 		Respectfully submitted,

>	*/s/ B. Russell Horton*
>	B. Russell Horton
>	rhorton@gbkh.com
>	George Brothers Kincaid & Horton LLP
>	114 West 7th Street, Suite 1100
>	Austin, TX 78701
>	Telephone: (512) 495-1400
>	Facsimile: (512-499-0094
>
>	Kevin P.B. Johnson
>	kevinjohnson@quinnemanuel.com
>	Todd Briggs
>	toddbriggs@quinnemanuel.com
>	Margaret Shyr (*pro hac vice* application to be filed)
>	margaretshyr@quinnemanuel.com
>	Joseph E. Reed (*pro hac vice* application to be filed)
>	joereed@quinnemanuel.com
>	Quinn Emanuel Urquhart & Sullivan, LLP
>	555 Twin Dolphin Drive, 5th Floor
>	Redwood Shores, CA 94065
>	Telephone: (650) 801-5000
>	Facsimile: (650) 801-5100
>
>	Nima Hefazi (*pro hac vice* application to be filed)
>	nimahefazi@quinnemanuel.com
>	Pushkal Mishra (*pro hac vice* application to be filed)
>	pushkalmishra@quinnemanuel.com
>	Quinn Emanuel Urquhart & Sullivan, LLP
>	865 South Figueroa Street, 10th Floor
>	Los Angeles, CA 90017
>	Telephone: (213) 443-3000
>	Facsimile: (213) 443-3100
>
>	*Counsel for Defendant*
>	*Juniper Networks, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 25, 2020, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated:   November 25, 2020

/s/ B. Russell Horton
B. Russell Horton

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), Juniper certifies that counsel has complied with the meet and confer requirement of the Local Rules.  Brazos opposes the foregoing motion.  The parties could not reach agreement because Juniper believes that transfer to the Northern District of California is warranted and Brazos disagrees.

Dated:   November 25, 2020

/s/ B. Russell Horton
B. Russell Horton