UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br><br> Plaintiff, <br><br> v. <br><br> JUNIPER NETWORKS, INC., <br><br> Defendant. | Nos.  6:20-cv-00812-ADA <br> 6:20-cv-00813-ADA <br> 6:20-cv-00814-ADA <br> 6:20-cv-00815-ADA <br> 6:20-cv-00902-ADA <br> 6:20-cv-00903-ADA <br><br> ***PUBLIC VERSION*** <br><br> **JURY TRIAL DEMANDED** |

**WSOU INVESTMENTS, LLC D/B/A/ BRAZOS LICENSING AND DEVELOPMENT'S
OPPOSITION TO JUNIPER NETWORKS, INC.'S MOTION TO
TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 1

    A.    Procedural Background.............................................................................. 1

    B.    Brazos is a Waco-Based Company with Deep Local Roots .......................... 2

    C.    Juniper Has Strong Ties to this District .................................................... 3

III.    TRANSFER IS NOT CLEARLY MORE CONVENIENT .......................................... 4

    A.    The Private Interest Factors Weigh Against Transfer.................................. 4

        1.    Relative Ease of Access to Sources of Proof Does Not Favor Transfer................. 4

        2.    The Availability of Compulsory Process Does Not Favor Transfer...................... 7

        3.    Cost of Attendance for Willing Witnesses Does Not Favor Transfer ................... 9

        4.    Other Practical Considerations Do Not Favor Transfer......................................... 13

    B.    The Public Interest Factors Do Not Favor Transfer.................................... 14

        1.    Court Congestion Does Not Favor Transfer ........................................................ 14

        2.    Local Interest Does Not Favor Transfer ............................................................. 14

        3.    Familiarity with the Law That will Govern the Case is Neutral............................ 15

        4.    Avoidance of Unnecessary Problems of Conflict of Laws is Neutral ................... 15

IV.    CONCLUSION....................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Adobe, Inc.*,
823 F. App'x 929 (Fed. Cir. 2020) .................................................................................1, 12

*AGIS Software Dev. LLC v. Huawei Device USA, Inc.*,
No. 2:17-cv-513, 2018 WL 2329752 (E.D. Tex. May 23, 2018) ...........................................9

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020).....................................................................1, 7, 12, 14

*Candela Corp. v. Palomar Medical Techs., Inc.*,
No. 9:06-cv-277, 2007 WL 738615 (E.D. Tex. Feb. 22, 2007).............................................15

*Fintiv, Inc. v. Apple, Inc.*,
No. 6:18-cv-372, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ...................................6, 8, 9

*Frederick v. Advanced Fin. Sols., Inc.*,
558 F. Supp. 2d 699 (E.D. Tex. 2007) .................................................................................10

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)...........................................................................12, 14

*KT Imaging USA, LLC v. HP, Inc.*,
No. 4:20-cv-337, 2021 WL 734979 (E.D. Tex. Feb. 25, 2021)...............................................8

*Kuster v. Western Digital Techs., Inc.*,
No. 6:20-cv-563, 2021 WL 466147 (W.D. Tex. Feb. 9, 2021) ...................................... *passim*

*Motorola, Inc. v. VTech Commc'ns, Inc.*,
No. 5:07-cv-171, 2009 WL 10677744 (E.D. Tex. Mar. 3, 2009) ...........................................5

*ParkerVision, Inc. v. Intel Corp.*,
No. 6:20-cv-108, 2021 WL 401989 (W.D. Tex. Jan. 26, 2021) ...................................... *passim*

*Parus Holdings, Inc. v. LG Elecs. Inc.*,
No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) .................................1

*Pasafeshare LLC v. Microsoft Corp.*,
No. 6:20-cv-397, 2021 WL 1298933 (W.D. Tex. Apr. 7, 2021) ...........................................13

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981).................................................................................................5

*QES Pressure Control LLC v. Zurich Am. Ins. Co.*,
No. 4:20-cv-50, 2020 WL 6821335 (W.D. Tex. Aug. 21, 2020) ...........................................13

*SITO Mobile R&D IP v. Hulu, LLC*,
No. 6:20-cv-472, 2021 WL 1166772 (W.D. Tex. Mar. 24, 2021)..............................5, 7, 9, 12

*In re Tracfone Wireless, Inc.*,
No. 21-136, 2021 WL 1546036 (Fed. Cir. Apr. 20, 2021) .....................................................13

*Turner v. Cincinnati Ins. Co.*,
    No. 6:19-cv-642, 2020 WL 210809 (W.D. Tex. Jan. 14, 2020) ....................................8, 9, 12

*Utterback v. Trustmark Nat'l Bank*,
    716 F. App'x 241 (5th Cir. 2017) ...........................................................................................5

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ........................................................................................11, 15

*WSOU Invest., LLC v. Microsoft Corp.*,
    No. 6:20-cv-454, 2021 WL 1298935 (W.D. Tex. Apr. 7, 2021) .................................. *passim*

## Other Authorities

Fed. R. Civ. P. 45 ........................................................................................................................8

## I.      INTRODUCTION

Juniper has not met its "significant burden" to show with compelling evidence that transfer to the Northern District of California is "*clearly* more convenient."  Brazos is a Waco-based company with deep roots in the local community.  Its sources of proof and witnesses are located in Waco.  Brazos has no offices, employees, or documents in NDCA.  Transferring this case would, at most, shift the inconveniences from one party to another, which is insufficient to justify transfer.

But Juniper, too, has ties to this District.  It has an office, employees, customers, and third-party partners in this District.  It sells and services accused products in this District, and thus commits acts of infringement in this District.  Its documents, which are stored on servers located across the country and the globe, are accessible from this District.  And many of its employees identified as having relevant knowledge are located outside of both districts.  This cannot satisfy Juniper's burden.  Juniper's reliance on *In re Apple*, *In re Adobe*, and *Parus Holdings*[1] to argue otherwise ignores the realities of its deficient proof, as well as the fact that Brazos is based in this District—something not true of the plaintiffs in any of those cases.  Thus, Juniper's Motion should be denied.

## II.     BACKGROUND

### A.      Procedural Background

Brazos filed five patent infringement actions against Juniper on September 8, 2020, and two more on October 1, 2020, each asserting infringement of one patent.  *See* Case Nos. 6:20-cv-00812, -00813, -00814, -00815, -00816, -00902, and -00903.  On November 25, 2020, Juniper

---

[1] *In re Apple Inc*., 979 F.3d 1332 (Fed. Cir. 2020); *In re Adobe, Inc*., 823 F. App'x 929 (Fed. Cir. 2020), *cert. denied sub nom. SynKloud Techs., LLC v. Adobe, Inc.*, No. 20-1211, 2021 WL 1240949 (Apr. 5, 2021); *Parus Holdings, Inc. v. LG Elecs. Inc*., No. 6:19-cv-432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020).

filed this motion, requesting that each of the pending cases be transferred to the Northern District of California.[2][3]  Dkt. 19.  Brazos agreed to file its opposition brief on April 23, 2021, with Juniper's reply brief to follow on April 30, 2021, to allow the Court sufficient time to render a decision before the *Markman* hearing, which is currently set for June 3, 2021.  Dkt. 38.

B.      **Brazos is a Waco-Based Company with Deep Local Roots**

Brazos is a Waco-based company that leverages its proprietary technology and management experience to help inventors and patent owners maximize the full potential of their patents.  Hogan Decl. at ¶ 2.  Brazos's principal place of business is in downtown Waco, less than two blocks from the Waco Division Courthouse.  *Id.*  Brazos chose Waco as its headquarters because it was attracted to the burgeoning tech business in Waco, with Baylor University acting as the anchor.  *Id.* at ¶ 3.  Brazos's sources of proof are located in and/or managed from Waco, and its employees are located there or are willing to appear there for trial.  *Id.* at ¶¶ 6, 9–10.  Brazos has no offices, employees, or documents in NDCA.  *Id.* at ¶ 10.

Not only does Brazos operate out of downtown Waco, it also has deep roots within the Waco community.  *Id.* at ¶ 2.  Brazos pays local taxes, hired a local business to renovate its corporate headquarters (an $80,000 project), and hired a local vendor to manage its servers.  *Id.* at ¶¶ 5, 9.  In conjunction with the Assistant Dean of Career Development at Baylor, Brazos will offer a PDP (Professional Development Program) session to students in the Hankamer School of Business.  *Id.* at ¶ 5.  Brazos has also proposed and is formulating a program with Baylor Law School's Intellectual Property Law & Entrepreneurship Clinic to offer a quarterly webinar series

---

[2] Juniper's Motion applied to the seven cases pending at the time of filing.  On March 23, 2021, the parties filed a joint stipulation of dismissal of Case No. 6:20-cv-00816.  This opposition brief, therefore, applies only to the six still-pending cases.

[3] Citations to "Dkt." refer to the docket in Case No. 6:20-cv-00812, unless otherwise stated.

for Baylor law students and local inventors, and has engaged in ongoing dialogue with Waco

Ventures, a group that manages outside-facing dealings for the Baylor Transfer Technology

Office. *Id.* at ¶¶ 5, 8. In addition, before the COVID-19 pandemic delayed its efforts, Brazos

had proposed a collaboration with Startup Waco—a local tech meetup in downtown Waco that

provides a place for designers, developers, entrepreneurs, and other locals in the community to

collaborate on projects and support one another's businesses. *Id.* at ¶ 7.

### C.     Juniper Has Strong Ties to this District

Although it argues otherwise, Juniper also has strong ties to Texas and this District.

Juniper has 164 employees who live in or work from Texas, including 40 in the Austin area, at

least some of whom sell and/or service accused products. *Id.*; *see also, e.g.*, Ex. A[4] at 69:1–7;

108:11–23; *accord* Ex. L at 11; Ex. C at 20. Juniper also has three offices in Texas, including

one in Austin. *E.g.*, Martinez Decl. at ¶ 13.[5] Juniper sells, services, and markets accused

products globally, ██████████████████████████████████████████

██████████████████████████████████████     Ex. B at 14; Ex. A at 68:5–14; *see also id.* at

---

[4] "Ex. _" refers to exhibits attached to the declaration of Sarah G. Hartman, filed herewith.

[5] Juniper waited until 6:30 p.m. CT last night to serve unverified supplemental discovery responses stating that its 164 Texas employees now work from home in Texas and that its Texas offices have recently closed. Ex. L. But any new changes that Juniper has made to its Texas offices that it chose to disclose on the eve of this filing are irrelevant because Juniper does not and cannot dispute that it maintained its Texas offices, including its Austin office, at the time these cases were filed. *See WSOU Invest., LLC v. Microsoft Corp.*, No. 6:20-cv-454, 2021 WL 1298935, at *5 (W.D. Tex. Apr. 7, 2021) ("Courts evaluate [the public and private interest factors] based on the situation which existed at the time of filing."). Indeed, just about 3 weeks ago, Mr. Martinez testified that although Juniper's Austin office was vacated due to the COVID-19 pandemic and that a few months ago Juniper decided that it will not renew the lease, *Juniper nevertheless maintained the Austin office at the time these actions were filed and will continue to pay the lease until it expires in another year*. *See, e.g.*, Ex. A at 61:1–19. Juniper also admitted that venue is proper in this District based on its Austin office. *See, e.g.*, Dkt. 17 at ¶ 6.

49:1–5; Ex. M.[6]  Juniper also has ▮ third-party resellers and/or distributors in this District that sell and/or service its products, including the accused products. Ex. B at 15; Ex. A at 71:7–72:23.

## III.    TRANSFER IS NOT CLEARLY MORE CONVENIENT

### A.    The Private Interest Factors Weigh Against Transfer

#### 1.    Relative Ease of Access to Sources of Proof Does Not Favor Transfer

After filing its Motion, Juniper admitted that all relevant documents are ▮▮▮▮



▮▮▮▮[7] *C.f.* Mot. at 8–9.  Because Juniper's

documentary evidence is stored ▮▮▮▮

▮▮▮▮, it cannot show that access to this proof is clearly more convenient in NDCA.  *See*

---

[6] Juniper's late-served discovery also included information that Brazos requested months ago regarding the sales of accused products in Texas in the past two years and the identities of Texas customers, which Juniper stated (in verified discovery responses) that it did not have the ability to produce. Ex. B at 14; Ex. L at 9. ▮▮▮▮



Ex. M.  The estimated number of customers is based on the number of unique "End Customer – Ultimate Parent (Key)" values reported in the sales information produced by Juniper last night, excerpts of which are included as Ex. M.  Juniper's decision to serve this information on the eve of this filing prevented Brazos from having the opportunity to depose its corporate witness and digest the data to determine the full extent to which it may support the present motion or to which Juniper may still be withholding relevant information.  Notwithstanding these tactics, the outcome is the same. ▮▮▮▮

▮▮▮▮hich further supports denying its request for transfer.

[7] *See, e.g.*, Ex. A at 33:23-24 ▮▮▮▮ 33:24–25 ▮▮▮▮ 33:25–34:2 ▮▮▮▮ 35:7–9 ▮▮▮▮

*see also* 36:8–37:4.

*Motorola, Inc. v. VTech Commc'ns, Inc.*, No. 5:07-cv-171, 2009 WL 10677744, at *5 (E.D. Tex. Mar. 3, 2009) (finding factor did not favor transfer where defendant's evidence was not confined to the transferee district but was instead spread out across the country).

Juniper's vague contention that the "majority" of documents are stored in Sunnyvale (Mot. at 9) is unpersuasive.  Juniper relies solely on the declaration of Arthur Martinez, but Mr. Martinez admitted during his Rule 30(b)(6) deposition that he did not investigate the veracity of the statements in his declaration prior to signing it.  *See, e.g.*, Ex. A at 116:11–15 ("Q. . . .  I would like to know whether you conducted any investigation to verify the truth of any of the statements in the Declaration?  A. Other than conversations with Juniper legal counsel, no.").[8] Even if he had, this is insufficient to show this factor favors transfer.  Juniper was required to identify sources of proof with specificity, including the evidence it could not obtain if trial was to proceed in this District.  *See, e.g.*, *SITO Mobile R&D IP v. Hulu, LLC*, No. 6:20-cv-472, 2021 WL 1166772, at *4 (W.D. Tex. Mar. 24, 2021) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)).  Juniper has not and cannot make this showing.  *See, e.g.*, Ex. A at 28:22–29:2 ("Q. Can you identify any document that is related to the accused products or features that is not accessible electronically?  A. To my knowledge, everything should be available in some form or other as an electronic file.").  This is insufficient.  *See Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017) ("Utterback fails to identify with any specificity *which witnesses and what evidence* would be inaccessible in Mississippi but readily available in Florida.  Without more, we cannot credit such vague and conclusional [sic] assertions.").

---

[8] *See also* Ex. A at 117:2–12 ("Q. If were you to verify the information in your Declaration, where would you go to do that?  A. I would go to the employee directory, look up the people's name and call—contact them specifically.  Q. But you didn't do that before signing this Declaration; right?  A. No.  Q. And you didn't do that before this deposition; correct?  A. No.").

In addition, Juniper has confirmed that all relevant documents are accessible globally, including in this District, for any individual with permissions.  *See, e.g.*, Ex. A at 33:9–12 ("[A]ccess [to documents related to the accused products and features other than source code] is enabled via the enablement of cloud platforms; for example, Google Cloud or AWS Cloud.  So that's how a person can gain access to different locations geographically."), 99:4–7 (confirming that sales, marketing, and service information is accessible globally); *see also* Ex. B at 9

███████████████████████████████████████████████████████████████

██████████████████.[9]  Thus, Juniper could provide relevant documents in either District with little effort.  *Kuster v. Western Digital Techs., Inc.*, No. 6:20-cv-563, 2021 WL 466147, at *3 (W.D. Tex. Feb. 9, 2021).  As this Court has explained, "[t]here is no realistic difference in the relative ease of access to these electronic documents from the transferor district as compared to the transferee district since the documents are easily accessible electronically."  *Id.*; *see also id.* ("[A]ccess to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another.").

The same is true with respect to source code.  Juniper admits that source code for the accused products is stored in source code repositories in multiple locations, including several outside of California.  Ex. C at 14 ("Source code for the Accused Products is located in source code repositories in Sunnyvale, California; Quincy, Massachusetts; Westford, Massachusetts; and Bangalore, India."); *see also, e.g.*, Ex. A at 39:17–40:18.  Juniper has also acknowledged that ██████████████████████████████████████████████████████████████

████████████████████████████████████.  *See, e.g.*, Ex. B at 9.  *See also Fintiv, Inc. v.*

---

[9] This admission directly contradicts Juniper's assertion that NDCA "provides clearly superior access to the sources of proof that will determine the outcome of this case."  Mot. at 10.

*Apple, Inc.*, No. 6:18-cv-372, 2019 WL 4743678, at *3 n.1 (W.D. Tex. Sept. 13, 2019)
("[S]ource code is, by its very nature, electronic, it can be easily transported electronically to
distant locations essentially instantaneously.").

Juniper's argument about the location of its employees (Mot. at 19) is irrelevant and
should be disregarded. *See, e.g.*, *Kuster*, 2021 WL 466147, at *2; *accord In re Apple*, 979 F.3d
at 1339 ("[t]his factor relates to the ease of access to non-witness evidence, such as documents
and other physical evidence").

Finally, Brazos is headquartered in Waco and its sources of proof are located there.
Hogan Decl. at ¶¶ 2, 9–10. Brazos's physical documents are stored in its Waco office, including
but not limited to patent-related documents and relevant correspondence and records from the
USPTO. *Id.* at ¶ 9. Additionally, Brazos's servers, which store its employee email accounts and
electronic documents (including ownership and chain of title documents, all documents and
correspondence regarding the patents-in-suit, and documents related to Brazos's formation and
business operations), are maintained and managed by Heart of Texas Network Consultants, a
local Waco business. *Id.* Accordingly, this factor does not favor transfer. *See, e.g.*, *WSOU*,
2021 WL 1298935, at *3 (concluding that "[Brazos'] sources of proof [] are in Waco," and factor
weighed slightly against transfer).

### 2.    The Availability of Compulsory Process Does Not Favor Transfer

This factor weighs against transfer because Juniper has not shown that transfer is clearly
more convenient for its non-party witnesses. *See SITO*, 2021 WL 1166772, at *5. Juniper's only
argument is that four prior art witnesses[10]—which it has not identified as "unwilling"—have a

---

[10] Although Juniper identified six purported prior art witnesses in its Motion, it concedes that two
are relevant only to the patent that was dismissed in the -00816 case. Briggs Decl. at ¶ 10.

large campus or headquarters in NDCA.  Mot. at 10; Briggs Decl. at ¶ 10.  This is unpersuasive.

This Court has placed minimal weight on the location of prior art witnesses, stating that "prior

art witnesses are very unlikely to testify (and [] [defendant] may have cherry picked them to

begin with)."  *Fintiv*, 2019 WL 4743678, at *5; *accord Kuster*, 2021 WL 466147, at *4.  Even if

these entities were entitled to weight (they are not), three of them—Futurewei Technologies,

Newisys, and IBM—have locations in Austin within 100 miles from the Waco Courthouse

(Exs. D–F), and, therefore, would also be subject to the subpoena power of *this* Court.  *See*

*ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-108, 2021 WL 401989, at *4 (W.D. Tex. Jan. 26,

2021).  The fourth, LinkedIn, has locations worldwide, including "30+ offices on 5 continents."

Ex. G.  Nevertheless, because Juniper has not alleged or shown that any potential witness is

unwilling to testify, this factor weighs against transfer.  *See Turner v. Cincinnati Ins. Co.*,

No. 6:19-cv-642, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020).

Juniper also ignores that several other non-party witnesses would be subject to the

subpoena power of this Court, including the inventors of U.S. Patent No. 7,382,781, who are

located in Plano and Richardson, Texas, respectively.  Dkt. 1, Ex. A at 1; Ex. H.  Although Plano

and Richardson are slightly more than 100 miles from the Waco Courthouse (Ex. I), these

witnesses would still be subject to this Court's subpoena power because Brazos has agreed to

pay their expenses to testify, and, therefore, they would not incur substantial expense.  Hogan

Decl. at ¶ 10; Fed. R. Civ. P. 45(c)(1)(B)(ii) ("A subpoena may command a person to attend a

trial, hearing, or deposition . . . within the state where the person resides, is employed, or

regularly transacts business in person, if the person . . . is commanded to attend a trial and would

not incur substantial expense."); *see also KT Imaging USA, LLC v. HP, Inc.*, No. 4:20-cv-337,

2021 WL 734979, at *4 (E.D. Tex. Feb. 25, 2021) (concluding that court had compulsory

process over witnesses who were in Texas but more than 100 miles from the courthouse because plaintiff pledged to pay expenses for the witnesses, and factor weighed against transfer).  This weighs against transfer.  *ParkerVision*, 2021 WL 401989, at *4 ("The fact that an inventor of a patent-in-suit is subject to the compulsory process of this Court tends to weigh against transfer.").  Inventors of other patents-in-suit and the prosecuting attorneys are located in Virginia, New Jersey, Maryland, Massachusetts, Ohio, India and Canada (Ex. I[11]), and would be at least slightly more inconvenienced if they had to travel to NDCA, since "[WDTX] would likely serve as something of a middle ground."  *ParkerVision*, 2021 WL 401989, at *5.[12]  This factor weighs against transfer.  *SITO*, 2021 WL 1166772, at *5; *Turner*, 2020 WL 210809, at *3.

### 3.    Cost of Attendance for Willing Witnesses Does Not Favor Transfer

The most important consideration under this factor is the convenience of willing, non-party witnesses.  *See, e.g.*, *Turner*, 2020 WL 210809, at *4.  Juniper has not identified any willing, non-party witnesses,[13] and this factor does not favor transfer.

Juniper's argument focuses on the location of employees with purportedly relevant knowledge.  Mot. at 6–8.  But the location of the movant's party witnesses is entitled to little weight and insufficient to support transfer.  *See Fintiv*, 2019 WL 4743678, at *6 ("[C]ourts give the convenience of party witnesses little weight."); *Turner*, 2020 WL 210809, at *4 ("[Movant]

---

[11] *See also* Case Nos. 6:20-cv-00813, Dkt. 1, Ex. A at 1; -00814, Dkt. 1, Ex. A at 1; -00815, Dkt. 1, Ex. A at 1; -00902, Dkt. 1, Ex. A at 1; -00903, Dkt. 1, Ex. A at 1.

[12] Juniper also admits that it has ██████ third party partners located in this District that may sell and/or service accused products, and thus may have relevant information for trial.

[13] Juniper's one-line reference to the prior art witnesses it identified for the compulsory process factor (Mot. at 8) should be disregarded.  Witnesses should not be double counted.  *E.g.*, *AGIS Software Dev. LLC v. Huawei Device USA, Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.").  Even if they are, prior art witnesses are unlikely to testify and do not favor transfer under this favor.  *Kuster*, 2021 WL 466147, at *7.  Further, as discussed *supra*, nearly all of the identified entities have locations in this District.

cannot cite inconvenience of its employee-witnesses as the basis for transfer."); *see also*

*Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("The

availability and convenience of party-witnesses is generally insignificant because a transfer

based on this factor would only shift the inconvenience from movant to nonmovant.").

To the extent the identified employees are entitled to any weight,[14] they do not show that

transfer is clearly more convenient because ███████████████████████████

███████████████████████████████. Martinez Decl. at ¶¶ 8–9. █████████████

████████████████████████████████████████████████████████████

███████████████████████████████. *Id.* at ¶¶ 8–9.[15] ████████████

████████████████████████████████████████████████████████████

Ex. B at 12. ████████████████████████████████████████████

████████████████████████ Mr. Martinez later testified that Juniper's Chief Sales

Officer, Marcus Jewell, "who is in charge of everyone related to sales and marketing" and who

---

[14] The only specifically identified employees are set forth in the Martinez declaration.  Martinez Decl. at ¶¶ 8–9.  But Mr. Martinez admitted at his deposition that he did not investigate the veracity of the statements in his declaration, including those identifying Juniper's employees with relevant knowledge, beyond a conversation with Juniper's counsel. *See supra* at 4 & n.6 (citing Ex. A at 116:11–15, 117:2–12).  Further, although Mr. Martinez verified Juniper's supplemental discovery responses that identified additional individuals with relevant knowledge (more than half of whom are located *outside* of California), Mr. Martinez testified that he did no investigation to determine whether the information was a true and accurate list of the persons most knowledgeable, and that he did not know the job responsibilities of the individuals he identified. *See, e.g.*, Ex. A at 100:17–101:2 █████████████████████████████ ██████████████████ Q. Did you do any investigation to determine whether this was . . . a true and accurate list of the persons most knowledgeable? A. No.  Q. How did you determine that these were the persons to include as most knowledgeable? A. This information was provided by Juniper legal counsel."), 101:18–21 ("Do you know why these three individuals were selected as the persons most knowledgeable on this technology?  A. No."); *see also* Ex. B at 24 [verification].

[15] The Martinez declaration actually identified ████████████████████████ ██████████ Martinez Decl. at ¶¶ 8–9.

could "gain access to any information with respect to sales," is located in London, England.  *See* Ex. A at 96:19–97:8; *see also id.* at 99:4–7; *accord* Ex. B at 12.  Employees traveling from █████ ████████████████████████████████ would likely consider WDTX as something of a middle ground, and thus would be at least slightly more inconvenienced traveling to NDCA than this District.  *ParkerVision*, 2021 WL 401989, at *5.

In addition, Mr. Martinez testified that other employees who may have relevant knowledge are located outside of California, including in Texas.  Specifically, Mr. Martinez confirmed that Derrell James, who is located in Dallas, Texas, is the Senior Vice President of service sales and has access to global service information on Juniper's products.  *See, e.g.*, Ex. A at 78:11–14 ("[I]f I had a service specific question, I would go to the service department.  So that would be the group under Derrell James.  He is our services VP."), 98:6–16 (confirming Derrell James is located in Dallas); *see also id.* at 99:8–12; Ex. C at 18.  Mr. Martinez also testified that some product managers with knowledge of Juniper's products are spread out globally, as are "service employees" who have specific knowledge about the accused products.  *See, e.g.*, Ex. A at 106:8–10, 107:5–18.  Further, at least 40 Juniper employees and ███ third-party resellers and/or distributors are located in this District, including some that sell and/or service accused products and may have relevant information.  *See supra* at 3.

This District is also the most convenient for Brazos and its witnesses.  *See ParkerVision*, 2021 WL 401989, at *5 (noting that courts may consider the convenience of plaintiff in its analysis) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008)).  Brazos's employees who live and work in Waco include Brazos's Managing Director of Business Development, Matt Hogan, who has relevant knowledge about Brazos's business operations and

will be designated as a witness with relevant knowledge in these cases.  Hogan Decl. at ¶ 1.[16]

Brazos's full-time in-house attorney, Sheyanna Osceola, also lives and works in Waco and

graduated from Baylor Law School.  *Id.* at ¶ 6.  Brazos has also hired students from Baylor Law

School to support its business plan, and has submitted job postings to Waco Legal Professionals

Association, Startup Waco, and Waco TXjobs.  *Id.* at ¶¶ 5, 6.  Brazos's President, Stuart Shanus,

and CEO, Craig Etchegoyen, who are most knowledgeable about Brazos's licensing practices,

are willing to appear for trial in this District, and doing so would not be inconvenient for them.

*Id.* at ¶ 10.  Additionally, to the extent some of the patents' inventors are willing witnesses, given

their varied locations across the country and the globe (*see supra* at 8), they will be at least

"slightly more inconvenienced by having to travel to California" than to Texas.  *In re Genentech,*

*Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Turner*, 2020 WL 210809, at *4 (concluding

that witnesses traveling from the across the country would find WDTX "considerably more

convenient" than the west coast).

    Accordingly, this factor does not favor transfer.  *See, e.g.*, *SITO*, 2021 WL 1166772, at

*6 (finding factor weighed against transfer because convenience of party witnesses entitled to

little weight and movant failed to identify specific third-party witnesses; "courts give more

weight to specifically identified witnesses and less weight to vague assertions that witnesses are

located in a particular forum").[17]

---

[16] Before working with Brazos, Mr. Hogan spent seven years on Wall Street before becoming the founding CEO of a company that pioneered consumer data control.  *Id.* at ¶ 4.  Mr. Hogan has close ties to the Waco community, including family members who are Baylor alumni.  *Id.*

[17] Juniper's reliance on *In re Adobe* and *In re Apple* (Mot. at 8) is misguided.  Unlike in *Adobe*, Juniper has not identified a "substantial number" of party witnesses in NDCA, and Brazos's witnesses *are* located in this District.  Further, in *Apple*, the district court had already concluded the majority of relevant party witnesses were located in NDCA and that both parties likely had a witness in NDCA, and together those findings showed that the factor should have at least slightly favored transfer.  The Court has not made either of those findings here.  These cases are also

### 4.      Other Practical Considerations Do Not Favor Transfer

"Practical problems include issues of judicial economy[.]"  *QES Pressure Control LLC v. Zurich Am. Ins. Co.*, No. 4:20-cv-50, 2020 WL 6821335, at *6 (W.D. Tex. Aug. 21, 2020). Juniper concedes this factor is neutral and does not identify any reason why transfer to NDCA would make this case more efficient or expeditious.  Mot. at 10–11.  This factor actually weighs against transfer.

Transferring this case to NDCA would cause undue delay and duplication of efforts. Brazos filed four of these cases on the same day, and two more shortly thereafter, against the same defendant.  All six cases are proceeding efficiently on the same schedule, and the Court has scheduled a joint *Markman* hearing covering all of the patents-in-suit.  Dkt. 38.  Indeed, the parties have been litigating these cases since they were filed in September and October 2020. "Transferring a case that has been actively litigating in one court causes set-backs and takes time. Thus, transfer [] would likely cause delay."  *Pasafeshare LLC v. Microsoft Corp.*, No. 6:20-cv-397, 2021 WL 1298933, at *5 (W.D. Tex. Apr. 7, 2021) (finding factor weighed against transfer).  This District is also less congested than NDCA, with 602 pending cases per judgeship as compared to 870 in NDCA.  Ex. K at 37, 66.  *See WSOU*, 2021 WL 1298935, at *5.  In addition, Juniper has filed IPR petitions against three of the six asserted patents.  As courts in NDCA grant stays pending IPRs much more frequently compared to this Court, transfer would likely impact the trial process and delay resolution of these cases.[18]  *See ParkerVision*, 2021 WL 401989, at *5–6.  Thus, transferring this case would be an act against judicial economy.

---

unlike *In re Tracfone Wireless, Inc.*, No. 21-136, 2021 WL 1546036, at *2 (Fed. Cir. Apr. 20, 2021), where there was not even "a single potential witness within or even close to Waco."

[18] Based on data provided by Docket Navigator, from 2017 to the present, courts in NDCA have stayed cases pending IPR 72.88% of the time, as compared to this Court, which has stayed cases only 30% of the time pending IPRs.  Ex. J.

**B.      The Public Interest Factors Do Not Favor Transfer**

**1.      Court Congestion Does Not Favor Transfer**

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial

and be resolved[.]"  *ParkerVision*, 2021 WL 401989, at *6 (citing *In re Genentech*, 566 F.3d at

1347).  Juniper's citation to outdated statistics from 2019 (Mot. at 10–11) is insufficient to show

that these cases will be tried faster in NDCA than in this Court.  Trial is scheduled in these cases

for July 11, 2022 (Dkt. 38), which is approximately 15 months away, and 21–22 months after

filing.  In contrast, the most recent statistics from United States Courts, for the 12-month period

ending in September 30, 2020, show a median time to trial for civil cases in NDCA of 44.5

months.  Ex K at 66.  The same published statistics show a median time to trial for WDTX of

20.4 months.  *Id.* at 37.  "Notably, these statistics do not account for the lost time that would

additionally accrue by transferring this case and establishing a new schedule with a new

presiding judge."  *Kuster*, 2021 WL 466147, at *8.  Thus, these cases will be resolved more

quickly in this Court, and this factor weighs against transfer.[19]

**2.      Local Interest Does Not Favor Transfer**

This District has a significant local interest in deciding this dispute because Brazos is

headquartered in Waco and has significant roots in the Waco community, as evidenced by its

numerous dealings with local businesses and with Baylor University.  *See supra* at 2–3; *accord*

*WSOU*, 2021 WL 1298935, at *5.  Brazos pays local taxes, hired a local business to renovate its

corporate headquarters (an $80,000 project), and hired a local vendor to manage Brazos's

---

[19] *In re Apple* does not show otherwise.  *See* Mot. at 12.  In that case, the Federal Circuit
cautioned against relying solely on a trial date scheduled significantly sooner than the historical
time to trial, and ultimately found this factor to be *neutral*.  To the contrary, here, the most recent
statistics show that the average time to trial in WDTX is slightly *faster* than the time to trial
based on the scheduled trial date, and both are quicker than the average time to trial in NDCA.

servers.  Hogan Decl. at ¶¶ 5, 9.  Brazos also works with Baylor University.  *Id.* at ¶ 5.  In addition, as this Court has recognized, Brazos's name "indicat[es] a connection with Waco and the Brazos River which flows through Waco."  *WSOU*, 2021 WL 1298935, at *5.

Juniper also has strong ties to this District, and acts of infringement are committed here. *See supra* at 3.  Juniper has an office in Austin (and did so at the time these cases were filed) and at least 40 employees in the Austin area.  *Id.*  Juniper sells, services, and markets accused products globally, █████████████████████████████████████████████████ ███████████████████████████████████████.  *Id.*  Juniper also has ██████ third-party resellers and/or distributors in this District, some of which sell and/or service accused products. *Id.* This factor weighs against transfer.  *WSOU*, 2021 WL 1298935, at *5 (finding factor weighed against transfer because Brazos is based in Waco and has strong local ties); *see also Candela Corp. v. Palomar Medical Techs., Inc.*, No. 9:06-cv-277, 2007 WL 738615, at *5 (E.D. Tex. Feb. 22, 2007) ("Given that some of the alleged actions of infringement occurred in this District, there exists some local interest in adjudicating this dispute."; finding factor weighed against transfer).

### 3.    Familiarity with the Law That will Govern the Case is Neutral

The parties agree this factor is neutral.  Mot. at 14.

### 4.    Avoidance of Unnecessary Problems of Conflict of Laws is Neutral

The parties agree this factor is neutral.  Mot. at 14.

## IV.    CONCLUSION

In sum, the private and public interest factors do not favor transfer.  None of the factors favor transfer, and nearly all weigh against transfer, including the most important factor, the convenience of willing witnesses.  Accordingly, Juniper has not met its "significant burden" to demonstrate that NDCA is "clearly more convenient."  *Volkswagen*, 545 F.3d at 314 n.10, 315. Thus, Brazos's choice of forum should be respected, and Juniper's Motion should be denied.

Dated: April 23, 2021

*Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
tel/fax: (512) 677-6825

David M. Stein
Texas State Bar No. 797494
dstein@brownrudnick.com
Sarah G. Hartman
California State Bar No. 281751
shartman@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612
telephone:  (949) 752-7100
facsimile:   (949) 252-1514

Edward J. Naughton
(admitted *pro hac vice*)
enaughton@brownrudnick.com
Rebecca MacDowell Lecaroz
(admitted *pro hac vice*)
rlecaroz@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
telephone:  (617) 856-8200
facsimile:   (617) 856-8201

Alessandra C. Messing
New York State Bar No. 5040019
amessing@brownrudnick.com
Timothy J. Rousseau
New York State Bar No. 4698742
trousseau@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
telephone:  (212) 209-4800
facsimile:   (212) 209-4801

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*