**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>    Plaintiff,<br><br>  v.<br><br>JUNIPER, INC.,<br><br>    Defendant. | Nos. 6:20-cv-00812-ADA<br>6:20-cv-00813-ADA<br>6:20-cv-00814-ADA<br>6:20-cv-00815-ADA<br>6:20-cv-00902-ADA<br>6:20-cv-00903-ADA<br><br>**JURY TRIAL DEMANDED** |

**BRAZOS'S REPLY CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.   U.S. Patent No. 7,382,781 (Case No. 6:20-cv-00812-ADA)................................................. 1

   A.   The "centralized node for coupling into a computer network" (claim 1) .................... 1

   B.   "second traffic configuration" (claims 1, 9, 18) .......................................................... 3

II.  U.S. Patent No. 7,518,990 (Case No. 6:20-cv-00814-ADA)................................................. 5

   A.   "routing algorithm determines the routes in a manner that ensures that failure of a single link in the network does not affect more than a designated maximum amount X of a bandwidth B of the traffic demand" (claims 1, 17, 18) ........................................................................................................................................... 5

   B.   "routing algorithm determines the routes in a manner that ensures that failure of a single link in the network affects a minimum amount of a bandwidth B of the traffic demand" (claim 6) ....................................................................................... 6

III. U.S. Patent No. 7,596,140 (Case No. 6:20-cv-00815-ADA)............................................... 7

   A.   "a network device" (claims 1–6, 13, 15, 16–19, 34–38).............................................. 7

   B.   "the device" (claims 21–24, 31, 33)............................................................................. 9

   C.   "by itself generate … a backward path [request / reservation] message" (claims 1, 16) / "generating … an independent backward path [request / reservation] message" (claims 21, 23) / "by a network device generating … a backward path reservation message" (claim 34) ....................................................... 10

IV.  U.S. Patent No. 7,620,273 (Case No. 6:20-cv-00902-ADA)............................................... 12

   A.   preambles of claims 1 ("A connection device") and 2 ("A router")........................... 12

V.   U.S. Patent No. 8,284,656 (Case No. 6:20-cv-00903-ADA)............................................... 14

   A.   preambles of claim 1 ................................................................................................... 14

<u>T</u>ABLE OF <u>A</u>UTHORITIES

**Page(s)**

**Cases**

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
  618 F.3d 1354 (Fed. Cir. 2010)...........................................................................................2

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
  No. 1:20-cv-00034-ADA, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) ..........................15

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014).............................................................................................1

*Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*,
  246 F.3d 1368 (Fed. Cir. 2001)...........................................................................................12

*Chiron Corp. v. Genentech Inc.*,
  363 F.3d 1247 (Fed. Cir. 2004).............................................................................................9

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
  958 F.3d 1348 (Fed. Cir. 2020).............................................................................................3

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*,
  292 F.3d 1363 (Fed. Cir. 2002).............................................................................................4

*Georgetown Rail Equip. Co. v. Holland L.P.*,
  867 F.3d 1229 (Fed. Cir. 2017)...........................................................................................15

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
  452 F.3d 1312 (Fed. Cir. 2006).........................................................................................7, 8

*M2M Sols., LLC v. Sierra Wireless Am., Inc.*,
  No. 1:14-cv-1102, 2019 WL 6328119 (D. Del. Nov. 26, 2019)...........................................1

*NetJumper Software, L.L.C. v. Google, Inc.*,
  No. 2:04-cv-70366, 2008 WL 835819 (E.D. Mich. Mar. 29, 2008)....................................14

*Philips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................................5

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999)...........................................................................................15

*Rivera v Int'l Trade Comm'n*,
  857 F.3d 1315 (Fed. Cir. 2017).............................................................................................9

*Rowe v. Dror*,
  112 F.3d 473 (Fed. Cir. 1997).............................................................................................14

*Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*,
  No. 3:14-cv-7869, 2016 WL 5898627 (D.N.J. Oct. 7, 2016) ...........................................3, 12

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002).............................................................................................4

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001) .......................................................................8

*Sentient Sensors, LLC v. Cypress Semiconductor Corp.*,
   No. 1:19-cv-1868, 2021 WL 289410 (D. Del. Jan. 28, 2021) ...................................2

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   983 F.3d 1367 (Fed. Cir. 2021) .......................................................................1

*Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991) .......................................................................5

*Thorner v. Sony Computer Entm't Am LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) .......................................................................5

*TomTom, Inc. v. Adolph*,
   790 F.3d 1315 (Fed. Cir. 2015) .......................................................................3

*Unwired Planet LLC v. Google Inc.*,
   111 F. Supp. 3d 1120 (D. Nev. 2015) ...............................................................2

*Visible Connections, LLC v. Zoho Corp.*,
   418 F. Supp. 3d 155 (W.D. Tex. 2019) .............................................................2

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) ....................................................1, 2

<u>**TABLE OF EXHIBITS**</u>

**Ex.      Description**

**Filed with Opening Brief**

1        Declaration of Scott Nettles, Ph.D. ("Nettles Decl.")

2        excerpts from L. R. Ford, Jr. et al., *Flows in Network* (1962) (WSOU-Juniper-0003133)

3        excerpts from Jack Edmonds et al., *Theoretical Improvements in Algorithmic Efficiency for Network Flow Problems*, 19 J. ACM 248 (Apr. 1972) (WSOU-Juniper-0003578)

4        excerpts from Ravindra K. Ahuja et al., *Network Flows: Theory, Algorithms, and Applications* (1993) (WSOU-Juniper-0004035)

5        excerpts from Thomas H. Cormen et al., *Introduction to Algorithms* (2d ed. 2001) (WSOU-Juniper-0004932)

6        Fujitsu, *GMPLS Signaling Protocol Interoperability Test in Multilayer Network* (May 20, 2003), available at https://www.fujitsu.com/global/about/resources/news/press-releases/2003/0520-11.html (WSOU-Juniper-0003340)

7        excerpts from file history for U.S. Patent No. 8,284,656 (U.S. Pat. App. No. 11/443,101)

8        RFC 3471, *Generalized Multi-Protocol Label Switching (GMPL) Signaling Functional Description* (WSOU-Juniper-004898)

9        CiteSeerX, *Citation Query: Introduction to Algorithms*, http://citeseerx.ist.psu.edu/showciting?cid=1910 (last access March 12, 2021) (WSOU-Juniper-0003113)

10       Larry Hardesty, *Milestone for MIT Press's Bestseller*, MIT News (Aug. 10, 2011), available at https://news.mit.edu/2011/introduction-to-algorithms-500k-0810 (WSOU-Juniper-0003938)

11       Julienne Walker, *Red Black Tree Tutorial*, Eternally Confuzzled http://www.eternallyconfuzzled.com/tuts/datastructures/jsw_tut_rbtree.aspx, available at https://web.archive.org/web/20141129024312/http://www.eternallyconfuzzled.com/tuts/datastructures/jsw_tut_rbtree.aspx (last accessed March 12, 2021) (WSOU-Juniper-0003115)

12       J. Bluestein, *Scholarly Resources for CompSci Undergrads*, http://web.cs.dal.ca/~jamie/UWO/.Refs/tech-books.html (last accessed March 12, 2021) (WSOU-Juniper-0003943)

**Filed with Reply Brief**

13       Juniper Networks Feature Explorer, a*vailable at* https://apps.juniper.net/feature-explorer/search-features.html (last accessed April 27, 2021)

References to Exhibits A–L refer to exhibits filed with Juniper's Response Claim Construction Brief.

# I.    U.S. Patent No. 7,382,781 (Case No. 6:20-cv-00812-ADA)

## A.    The "centralized node for coupling into a computer network" (claim 1)

Juniper is wrong that this preamble provides the only structure for the claimed apparatus. *See* Resp.[1] at 2. The Federal Circuit has held that "'[s]tructure' to a person of ordinary skill in the art of computer-implemented inventions may differ from more traditional, mechanical structure."[2] "'[S]tructure' of computer software is understood through, for example, an outline of an algorithm, a flowchart, or a specific set of instructions or rules."[3] The body of this claim provides exactly such structure, reciting a detailed 3-step algorithm to be performed by the claimed apparatus. Juniper does not provide any reason why these limitations should be considered merely "functional." Unlike in *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, where the limitations were functional because they stated the intended outcomes by reciting what the claimed apparatus was "for,"[4] the body of the claim here recites specific algorithmic "steps" that the claimed apparatus is "programmed to perform." Moreover, *SIMO Holdings* dealt with language the "placement [of which] … suggest[ed] that it [was] part

---

[1] Brazos cites to its Opening Claim Construction Brief as "Op." and Juniper's Response Claim Construction Brief as "Resp." Emphasis in quotations throughout the brief are added unless otherwise indicated.

[2] *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*).

[3] *Id.*; *see also M2M Sols., LLC v. Sierra Wireless Am., Inc.*, No. 1:14-cv-1102, 2019 WL 6328119, at *4 (D. Del. Nov. 26, 2019) ("'Structure,' with regard to computer-implemented inventions, most often takes the form of 'an algorithm for performing the claimed function.'" (quoting *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1352 (Fed. Cir. 2015) (*en banc*)).

[4] 983 F.3d 1367, 1372–73, 1375 (Fed. Cir. 2021) ("8. A wireless communications client or extension unit comprising a plurality of memory, processors, programs, communication circuity, authentication data stored on a subscribed identity module (SIM) card and/or in memory and non-local calls database, at least one of the plurality of programs stored in the memory comprises instructions executable by at least one of the plurality of processors *for*: [limitations identified by the Court as 'functional']." (language found by Court to be limiting underlined)).

of the body of the claim, a characterization that, if accepted, would place its limiting character beyond dispute," and the Court only addressed the language as part of the preamble because the parties treated it as such.[5] Here, by contrast, there is no indication that the preamble is part of the claim body, and it is, therefore, not properly treated as structural.

Juniper is also incorrect that the preamble is limiting because a portion of it—the words "a computer network"—provides antecedent basis for a term—"the network"—in the body. Resp. at 3. The fact that a term "referenced in the bodies of [claims] first appears in their preambles" alone is not "sufficient to render the preambles limiting."[6] The Federal Circuit has held that where an initial recitation in the preamble does not "provide any 'context essential to understanding' the meaning of [the term] in the body of [the] claim," it is not limiting because "the claim drafters did not rely on the preamble language to define or refine the scope of the asserted claims."[7] Further, this Court determined that the preamble "[a] system for application sharing" was not limiting even though the body referred to "the application sharing" because the preamble did not "illuminate[] the meaning of terms within the body of the claims or [provide] context essential for understanding their meaning."[8] That is exactly the case here. The

---

[5] *Id.* at 1375 ("The language at issue follows, rather than precedes, the word 'comprising,' which is one of the transition words that typically mark the end of the preamble, with what follows constituting the body of the claim.").

[6] *Unwired Planet LLC v. Google Inc.*, 111 F. Supp. 3d 1120, 1127 (D. Nev. 2015), *aff'd in relevant part*, 660 F. App'x 974 (Fed. Cir. 2016); *see also Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010); *Visible Connections, LLC v. Zoho Corp.*, 418 F. Supp. 3d 155, 161 (W.D. Tex. 2019) (Pitman, J.); *Sentient Sensors, LLC v. Cypress Semiconductor Corp.*, No. 1:19-cv-1868, 2021 WL 289410, at *5 (D. Del. Jan. 28, 2021).

[7] *Am. Med. Sys.*, 618 F.3d at 1359 (finding "photoselective vaporization of tissue," with the body referring to "the tissue," not limiting because "[t]he preamble's reference … does not specify a particular type or location of tissue being treated").

[8] *Visible Connections*, 418 F. Supp. 3d at 161; *see also Sentient Sensors*, 2021 WL 289410, at *5 ("an instrument controller," with body referring to "the instrument controller," "does not provide essential structure … or any context essential to understanding those components").

2

preamble's recitation of "a computer network" does not illuminate the meaning of the term "the network" in the body of the claim, and Juniper does not show otherwise. It is, therefore, not limiting.

Even if "a computer network" provides antecedent basis for "the network," this is insufficient to convert the entire preamble into a limitation.[9] As the Federal Circuit has confirmed, "[a] conclusion that some preamble language is limiting does not imply that other preamble language, or the entire preamble, is limiting."[10] In *Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, the Federal Circuit rejected the defendant's argument that "the preamble term 'a patient' [] provide[d] antecedent basis for [a] later recitation of 'the patient" (the same argument Juniper advances here), because "that [was] not the preamble language [the defendant] argues is limiting."[11] It would thus be error to construe "centralized node" as a limitation on the basis that the preamble's separate recitation of "a computer network," which is not disputed by the parties,[12] provides antecedent basis for a term in the body.

**B.   "second traffic configuration" (claims 1, 9, 18)**

Juniper only addresses the "a multicast routing configuration" portion of its proposed construction in a footnote, which incorrectly implies that Brazos agrees with Juniper's position.

---

[9] *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323–24 (Fed. Cir. 2015) ("[T]he [district] court erred in determining that it had to construe the entire preamble if it construed a portion of it. … It was … error for the district court to use an antecedent basis rationale to justify converting [an] independent part of the preamble into a new claim limitation.").

[10] 958 F.3d 1348, 1355 (Fed. Cir. 2020); *see also Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*, No. 3:14-cv-7869, 2016 WL 5898627, *5 (D.N.J. Oct. 7, 2016) (agument "not persuasive" that "the entire preamble should be deemed limiting" because "portions of the preamble that describe the 'patient' for whom the treatment is intended provides antecedent basis for the phrase 'said patient' in the body" are "intertwined with the balance of the preamble").

[11] *Cochlear Bone Anchored Sols.*, 958 F.3d at 1355.

[12] *See* Resp. at 2–4 (focusing entirely on "centralized node" portion of preamble except where addressing its antecedent basis argument, including in the conclusion to its argument).

Resp. at 4 n.3. Juniper ignores the two paragraphs in Brazos's Opening Brief (at 5–6) explaining why this portion is either duplicative and unnecessary or is otherwise wrong to the extent that it differs without reason from the explicit language in the claims, *i.e.*, that the "second traffic configuration" is "for routing multicast packet traffic along the network." Because Juniper failed to address any of Brazos's arguments on this point and failed to demonstrate that this portion of its proposed construction is correct, Juniper has waived any argument that the "second traffic configuration" should be construed as "a multicast routing configuration."

Juniper's assertion that "[t]here can be no dispute that [its] construction is correct for claim 1" relies on the incorrect assumption that claim 1's preamble is limiting. *See* Resp. at 4. Even if the preamble is a limitation, construing the term in this manner is unnecessary because the claim already requires that the claimed apparatus—whether or not it is a centralized node—must be programmed to perform the claimed "configuring."

Juniper's contention that a "centralized node" must also be read into claim 18 because "claim terms are presumed to have the same meaning throughout all of the claims," Resp. at 7, makes little sense. It is illogical to assert that a term must be read a certain way in one claim because of the surrounding language in that claim and then assert that the term must be read the same way in another claim that does not recite the same surrounding language. Moreover, claim 18 is a method claim, which "cover[s] any process that performs the method steps."[13] As such, it is improper to read a limitation into claim 18 that identifies what kind of device must perform the method.

---

[13] *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1312 (Fed. Cir. 2002) (method claims are "not tied to a particular device"); *see also Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1374–75 (Fed. Cir. 2002) ("monitoring" need not be "performed by the apparatus described in the [asserted] patent").

Juniper's remaining argument is that the "second traffic configuration" must be "constructed by a centralized node" because that is how the second traffic configuration is constructed in the disclosed embodiment, asserting that this is "the entire invention of the '781 patent." Resp. at 5–7. The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."[14] Moreover, "it is the claims that define the metes and bounds of the patentee's intention,"[15] not some imagined "entire invention" as asserted by an infringer. Regardless, "it is entirely consistent … to present … claims[] drawn to only one aspect or combination of elements of an invention that has utility separate and apart from other aspects."[16]

## II.   U.S. PATENT NO. 7,518,990 (CASE NO. 6:20-CV-00814-ADA)

### A.   "routing algorithm determines the routes in a manner that ensures that failure of a single link in the network does not affect more than a designated maximum amount X of a bandwidth B of the traffic demand" (claims 1, 17, 18)

Juniper concedes that this term is not indefinite. Resp. at 9–11. In the interest of compromise and to preserve the Court's and the parties' resources, Brazos agrees to Juniper's newly proposed construction of this term as "routing algorithm determines the routes in a manner that ensures that failure of a single link in the network does not affect more than a maximum amount X of a bandwidth B of the traffic demand, where X is a specific input to the claimed routing algorithm."

---

[14] *Philips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*).

[15] *Thorner v. Sony Computer Entm't Am LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012); *see also id.* at 1365 ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term.").

[16] *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180–81 (Fed. Cir. 1991) (finding district court decision that concluded claim was invalid because it did not recite the full scope of what the district court considered to be the disclosed "invention" was "legal error").

**B.**   **"routing algorithm determines the routes in a manner that ensures that failure of a single link in the network affects a minimum amount of a bandwidth B of the traffic demand" (claim 6)**

Juniper now concedes this term is not indefinite but asserts that its newly proposed construction[17] is necessary to provide "guidance from the specification" to render it definite. Resp. at 11–12. But Juniper has not shown that the use of the word "minimum" in this term creates any lack of an objective boundary justifying replacement of the patentee's chosen words with Juniper's preferred terminology. The decisions Juniper cites explain that terms of degree can be indefinite when there is no guidance from the specification, *see* Resp. at 11, but here, as conceded by Juniper, the specification provides exactly such guidance, teaching algorithms that "determine[] the routes in a manner that ensure[] that failure of a single link in the network affects a minimum amount of a bandwidth B of the traffic demand." *See e.g.*, '990 patent at 9:23–35, Fig. 3; *see also* Op. at 9–14. Juniper's construction seeks to replace the word "minimum" with "smallest possible," but Juniper does not explain why the meaning of "minimum amount of bandwidth" is unclear in view of the specification, why "smallest possible" is any more clear, or why it should replace the patentees' chosen words.

Juniper's newly proposed construction is also unsupported. In changing the patentee's chosen use of the phrase "a minimum amount of bandwidth" to "the smallest possible amount of a bandwidth," Juniper cherry picks a single sentence from Brazos's Opening Brief out of the more than two pages explaining how the specification provides guidance for this term. *See* Op. at 11–14. Juniper does not provide a single citation to the patent or any other evidence to show that

---

[17] Juniper abandoned its contention that this term is indefinite, but now asserts a newly advanced proposed construction of "wherein the routing algorithm determines the routes in a manner that ensures that failure of a single link in the network affects the smallest possible amount of a bandwidth B of the traffic demand."

this alteration is necessary or proper. As the meaning of "routing algorithm determines the routes in a manner that ensure that a failure of a single link in the network affects a minimum amount of a bandwidth B of the traffic demand" can be readily understood by reviewing the patent's teachings, no further construction is necessary. *See* Op. at 9–14; Ex. 1, Nettles Decl. at ¶¶ 25–33.

## III.   U.S. PATENT NO. 7,596,140 (CASE NO. 6:20-CV-00815-ADA)

### A.   "a network device" (claims 1–6, 13, 15, 16–19, 34–38)

Juniper's attempt to exclude GMPLS-capable devices is a thinly veiled effort to avoid infringement liability. In Junos OS, which is the operating system used on all of the accused devices, the GMPLS implementation is part of the larger MPLS subsystem, as reflected in Juniper's documentation. For example, as shown in Exhibit 13, Juniper's website lists GMPLS nested under the "Feature Family" of "Multi Protocol Label Switching (MPLS) Applications."

Relying on the patent's description of the state of the art, Juniper attempts to add a negative limitation—"as opposed to GMPLS"—in an effort to exclude GMPLS devices from the claims. But the discussion of the drawbacks of GMPLS in the patent's Background section is not a conclusion that the invention is "an MPLS (as opposed to a GMPLS) device." The statement that "GMPLS techniques are not compatible with MPLS-based devices," '140 patent at 1:17–18, and the patent's goal of addressing "[t]he inability of MPLS-based devices to set up LSPs in both directions," *id.* at 1:23–25, does not foreclose the possibility of GMPLS-capable devices setting up bi-directional LSPs in accordance with the claimed methods.

The '140 patent is directed to "Methods and Devices for Creating Bi-directional LSPs" by "bundling a forward and backward LSP." *Id.* at Title, Abstract. Any network devices capable of practicing the claims falls within their scope. Nowhere in the specification does the patentee describe the invention as "an MPLS (as opposed to a GMPLS) device." Unlike in *Honeywell*

*Int'l, Inc. v. ITT Indus., Inc.*,[18] the patentee here did not even once, let alone "[o]n at least four occasions," describe limitations of "this invention" or "the present invention." The patentee never stated that "this invention" or "the present invention" is "an MPLS (as opposed to a GMPLS) device" or is even simply an "MPLS device." Instead, the patentee repeatedly describes "the present invention" as methods of creating bi-directional LSPs. *See* '140 patent, at 1:30–36, 1:49–58, 2:36–27, 3:51–56. Juniper's contention that the '140 patent characterized "the 'invention' as a MPLS device," *see* Resp. at 25, is incorrect and misleading.

Juniper relies on *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, but that case is inapposite. There, the Court relied on "[t]he most compelling portion of the specification": a passage reciting that the particular coaxial structure "is the basic sleeve structure for *all embodiments of the present invention contemplated and disclosed herein*."[19] There is ***no such*** language in the '140 patent to support Juniper's construction. To the contrary, the patentee explicitly contemplated a broad application of the disclosed methods of creating bi-directional LSPs. *See*, *e*.*g*., '140 patent at 4:19–24 ("The above discussion has set forth some examples of the ideas envisioned by the present invention. Practically speaking, it is impossible to set forth each and every example. Variations of the examples given above are considered to be within the spirit and scope of the present invention, the scope of which is more aptly defined by the claims which follow."). The cases Juniper relies on pertain to inapplicable technologies. Here, the question is whether the patentees—innovators at Alcatel-Lucent who were well-versed in networking applications—intended to exclude GMPLS devices. They did not. Cases addressing whether chimeric antibodies are within the scope of a claim directed to monoclonal

---

[18] 452 F.3d 1312, 1318 (Fed. Cir. 2006).

[19] 242 F.3d 1337, 1343 (Fed. Cir. 2001) (emphasis in original, citations omitted).

antibodies[20] or whether packages of water-permeable material are within the scope of claims directed to coffee pods[21] are unhelpful. The patent here provides sufficient description regarding bundling separately created LSPs to create bi-directional LSPs and the claims are enabled for that purpose. Juniper's assertions that the claims are not enabled for GMPLS applications, or lack written description for such an embodiment, are nothing more than unsupported attorney argument. Juniper does not explain why, or provide evidence to demonstrate that, a GMPLS device could not operate to set up path requests in the manner claimed.

**B.     "the device" (claims 21–24, 31, 33)**

There is nothing confusing or unclear about this term and Brazos has not asked the Court to redraft the claims. Rather, Brazos has shown that a person of ordinary skill in the art would understand what "the device" refers to, and would understand the scope of claims 21–24, 31, and 33 because such person would be familiar with the use of LSPs, including as a path between two network nodes. Op. at 17–19. Juniper's misapprehension about the basics of LSPs does not support an indefiniteness ruling. The claims themselves differentiate between "the device" and "the source." *See*, *e.g.*, '140 patent at claim 21 ("wherein the separately established forward and backward LSPs form a bi-directional LSP between the device and the source"). As Juniper points out, a device may serve as the source of the path request message in one instance and be the destination of a path request in another instance. Resp. at 19. This makes perfect sense in the context of the invention, which bundles separately created LSPs between network devices. *See* '140 patent at 2:27–32 ("Though the network device 2 is operating as a source device and the

---

[20] *Chiron Corp. v. Genentech Inc.*, 363 F.3d 1247, 1252–55 (Fed. Cir. 2004) (patentees "could not have possession of, and disclose, the subject matter of chimeric antibodies that did not even exist at the time of the [asserted patent's] application").

[21] *Rivera v Int'l Trade Comm'n*, 857 F.3d 1315, 1319–21 (Fed. Cir. 2017) (specification did not teach an integrated filter and did not provide written description support for such a container).

network device 1 is operating as a destination device in Fig. 1B, it should again be understood that each of these devices may operate as a source, destination or source and destination device."). At each step, the claims also differentiate between "the device" and "the destination." *See*, *e.g.*, *id.* at claim 23 ("The method as in claim 21 further comprising the steps of generating and sending an independent backward path reservation message to a destination after receiving a backward path request message from the destination in order to establish a backward LSP between the device and the destination."). Contrary to Juniper's contention, the patent does not indicate that "the device" of claims 21–24, 31, and 33 may be an intermediate device. The specification states that the MPLS network includes a number of intermediate devices, but "their presence is not necessary for an understanding of the present invention." *Id.* at 2:13–19. The asserted claims differentiate between "the device," "the source," and "the destination," and the specification makes clear that the invention is directed to bundling unidirectional LSPs, *i.e.*, forward path, to create bi-directional LSPs. Because the LSPs only go in one direction, "the device" must necessarily be at one end of the LSP. Thus, as used in the asserted claims, "the device" is not indefinite and does not need to be construed for the same reasons described for "a network device."

**C.     "by itself generate … a backward path [request / reservation] message" (claims 1, 16) / "generating … an independent backward path [request / reservation] message" (claims 21, 23) / "by a network device generating … a backward path reservation message" (claim 34)**

Juniper misconstrues the patentees' statements during prosecution. In distinguishing the invention from the prior art, the patentees did not indicate that the network device may not use "specific routing information provided in the forward request, such as bandwidth designations." Rather, the patentees explained that the So reference teaches that "the characteristics of the

'backward' path are *defined solely by the 'set up request' received by the router without any modification or independent action by the receiving unit*." Ex. G at 16:

> … The Applicants further contend that the cited portions of So cannot fairly be characterized as providing for the "independent" generation of the "backward path" as recited in the pending claims. Indeed, with respect to backward path generation, So's "last-hop" router may be more fairly characterized as a "slave" unit that *merely utilizes the routing information from the setup request* and does not provide for any alternative routing path or routing path source(s).
>
> The Applicants contend that the claim amendments reflected above are intended to exclude from the claimed subject matter embodiments in which the setup request provides specific routing information for the backward path. …

*Id*. at 16–17. These arguments show that the patentees did not clearly and unmistakably disclaim any and all use of routing information provided in the forward request and that the Applicants made no mention of "bandwidth designations" whatsoever. Instead, the patentees differentiated their inventions from the So reference by demonstrating that the network device is not only a slave unit that "merely utilizes the routing information from the setup request" to "simply reverse[] the forward routing path." *Id*. at 16. The claimed network device may provide for an alternative routing path, but that does not mean that the routing information, including any bandwidth designations, from the forward request cannot be used or considered in determining which route is best for establishing the backward LSP.

Regarding Enoki, Juniper truncates the patentees' statements and misconstrues their arguments. In full, the patentees contended "that Enoki, like So, provides for a terminal device capable of transmitting a backward path based on the 'bidirectional setup' information received from LSR 1, but that there has been no showing that Enoki teaches or suggests that the 'LSR 3' router is capable of independently ('by itself') generating a backward path." Ex. C at 16. The patentees further explained, "in both So and Enoki, the characteristics of the 'backward' or

11

'down direction' path are defined by the 'setup request' received from LSR 1 ***without any modification or independent action by the receiving unit in defining the 'down direction' parameters***." *Id.* at 17. Contrary to Juniper's construction, "modification" of the parameters indicates that routing information from the forward request is being used. Juniper's improper attempt to add a negative limitation is not supported by the file history or the specification and should be rejected.

## IV.    U.S. PATENT NO. 7,620,273 (CASE NO. 6:20-CV-00902-ADA)

### A.    preambles of claims 1 ("A connection device") and 2 ("A router")

Juniper's argument that these preambles must be construed as limitations because otherwise claims 1 and 2 would have the same scope, Resp. at 27, should be rejected as "blindly apply[ing] the doctrine [of claim differentiation]."[22] The Federal Circuit has rejected this exact approach, finding the preambles of two independent claims not to be limiting even where the bodies of the claims were otherwise identical.[23] In doing so, the Federal Circuit specifically "conclu[ded] that independent claims 1 and 5 have identical scope."[24]

Juniper is also wrong that the patentee distinguished the prior art on the basis of the preambles and that the examiner relied on the preambles in allowing the claims. *See* Resp. at 27–28. In the November 6, 2006 Amendment, the patentee merely mentioned the preamble of claim 1 in introducing the actual claim language that it argued was not disclosed by the prior art, stating that the prior art "fails to teach or suggest a connection device ***that comprises an optical switch that receives ULR optical signals and connects at least one non-dedicated processing***

---

[22] *See Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1376 (Fed. Cir. 2001).

[23] *Id.* at 1371–72 (only differences between independent claims 1 and 5 were their preambles).

[24] *Id.*; *see also Sanofi-Aventis U.S.*, 2016 WL 5898627, at *6 (finding preambles not limiting where doing so resulted in "dependent Claims 24 and 28 … hav[ing] the same scope").

***unit to one or more of the received signals based on a characteristic of each signal***." Ex. K at WSOU-Juniper-0001949. The patentee actually distinguished the prior art based on the portion of the claim limitation emphasized in the foregoing quote, and indeed never made any argument that the prior art did not disclose "a connection device." Rather, the patentee argued that the prior art was "silent with respect to the type of optical signals involved," was "not directed towards ULR signals," and did not disclose "non-dedicated processing units." *Id.* Similarly, in the March 21, 2007 Request for Reconsideration, the patentee also only mentioned the preamble of claim 1 in introducing the actual claim language that it argued was not disclosed by the prior art, going so far as to underline the limitations that it was relying on, stating that the prior art "fails to teach or suggest a connection device that comprises an optical switch that receives ULR optical signals and connects at least one non-dedicated processing unit to one or more of the received signals based on a characteristic of each signal." Ex. K at WSOU-Juniper-0001972 (underlining in original). The patentee never argued that the prior art did not disclose "a connection device," but instead presented arguments only about the portions of the claim limitations that it underlined. *Id.* Finally, in the July 1, 2009 Reasons for Allowance, the examiner never stated that the claim preambles were limitations that were not found in the prior art. Instead, the examiner stated that it was "the claimed structure and claimed limitations" that made "a rejection under 35 USC 102 or 103 … improper," and identified the "specific optical modules, which are not apparent or taught or suggested by the prior art as recited in the claimed invention." Ex. K at WSOU-Juniper-0002059. Contrary to Juniper's contention, neither the patentee or the examiner ever identified the preambles as limitations or used them to distinguish the claimed invention from the prior art.

## V.     U.S. PATENT NO. 8,284,656 (CASE NO. 6:20-CV-00903-ADA)

### A.     preambles of claim 1

Juniper cites no evidence to support its contention that the "preamble of claim 1 ends at the colon because the word 'comprising' does not necessarily signal the end of the preamble." Resp. at 31. Juniper fails to meaningfully address the fact that the claims were initially presented with a break after the first recitation of "comprising," indicating that the preamble terminates there.[25] Op. at 24–25. Moreover, although Juniper would have the Court believe otherwise, there is no generally accepted rule that the preamble always includes everything preceding the colon. Juniper's reliance on a single out-of-district case is unconvincing and its parenthetical is misleading. In *NetJumper Software*, *L.L.C.* v. *Google, Inc.*, the parties did not dispute where the preamble terminated and the court did not make a specific finding on that point.[26] Juniper's assertion regarding "reading the claim as a whole" is confusing and irrelevant.

Juniper also argues that the preamble is limiting even recognizing that the preamble is limited to the portion reciting "[a] system of redundant pair automatic protection switching at the edge of a Virtual Private Lan System (VPLS) network comprising." Resp. at 31. Juniper is wrong. The purpose of a preamble is to set forth the general technical environment of the invention, and it is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose of intended use for the invention."[27]

---

[25] Instead, Juniper incorrectly states that Brazos is attempting "to correct alleged errors in the patent." Resp. at 30, n.8. Juniper cites no authority that the presence or absence of a line break is an "error" that must be "corrected." Brazos did not rewrite any language of the claims, but merely presented them in their original form.

[26] No. 2:04-cv-70366, 2008 WL 835819, at *3–5 (E.D. Mich. Mar. 29, 2008) (finding preambles not limiting because they did not provide antecedent basis for any limitations).

[27] *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997).

Regardless of where the preamble ends, the claim recites three "provider edge nodes," two that are part of a redundant pair and a separate "third provider edge node." Juniper does not dispute that this body of the claim is structurally complete and does not argue that the preamble provides antecedent basis for any limitation in the body. Juniper's contention that "the preamble's recitation of the location of the 'edge' is ***similar to*** providing antecedent basis for the term 'edge' in the body of the claim" does not stand up. There is no such rule that limitations that are allegedly "similar to" providing antecedent basis (whatever that means) support finding a preamble to be limiting. Juniper also does not argue that the preamble recitation is relied upon during prosecution to distinguish the claimed invention from the prior art. Because Juniper has failed to prove, let alone argue, any of these facts, it has not met its burden to demonstrate that the preamble gives "life, meaning, and vitality to the claim[s]" and has not overcome the presumption that the preamble is not limiting.[28]

---

[28] *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999); *see also Ancora Techs., Inc. v. LG Elecs. Inc.*, No. 1:20-cv-00034-ADA, 2020 WL 4825716, at *6 (W.D. Tex. Aug. 19, 2020) ("Courts presume that the preamble does not limit the claims." (citing *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358)); *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) ("Generally, the preamble does not limit the claims." (citations omitted)).

Respectfully submitted,

Dated: May 3, 2021                 */s/ Raymond W. Mort, III*
                                    Raymond W. Mort, III
                                    Texas State Bar No. 00791308
                                    raymort@austinlaw.com
                                    THE MORT LAW FIRM, PLLC
                                    100 Congress Avenue, Suite 2000
                                    Austin, Texas 78701
                                    tel/fax:   (512) 677-6825

                                    Alessandra C. Messing
                                    New York State Bar No. 5040019
                                    amessing@brownrudnick.com
                                    Timothy J. Rousseau
                                    New York State Bar No. 4698742
                                    trousseau@brownrudnick.com
                                    Yarelyn Mena
                                    (*pro hac vice*)
                                    ymena@brownrudnick.com
                                    BROWN RUDNICK LLP
                                    7 Times Square
                                    New York, New York 10036
                                    telephone:   (212) 209-4800
                                    facsimile:   (212) 209-4801

                                    Edward J. Naughton
                                    Massachusetts State Bar No. 600059
                                    enaughton@brownrudnick.com
                                    Rebecca MacDowell Lecaroz
                                    (*pro hac vice*)
                                    rlecaroz@brownrudnick.com
                                    BROWN RUDNICK LLP
                                    One Financial Center
                                    Boston, Massachusetts 02111
                                    telephone:  (617) 856-8200
                                    facsimile:  (617) 856-8201

                                    David M. Stein
                                    Texas State Bar No. 797494
                                    dstein@brownrudnick.com
                                    Sarah G. Hartman
                                    California State Bar No. 281751
                                    shartman@brownrudnick.com
                                    BROWN RUDNICK LLP
                                    2211 Michelson Drive, 7th Floor
                                    Irvine, California 92612

16

telephone:   (949) 752-7100
facsimile:   (949) 252-1514

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*