UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,**<br><br>    Plaintiff,<br><br>v.<br><br>**JUNIPER NETWORKS, INC.,**<br><br>    Defendant. | CIVIL ACTION Nos.: 6:20-cv-00812-ADA<br>6:20-cv-00813-ADA<br>6:20-cv-00814-ADA<br>6:20-cv-00815-ADA<br>6:20-cv-00816-ADA<br>6:20-cv-00902-ADA<br>6:20-cv-00903-ADA<br><br>**JURY TRIAL DEMANDED** |

## ORDER DENYING DEFENDANT JUNIPER'S MOTION TO TRANSFER

Came on for consideration this date is Defendant Juniper Network Inc.'s Motion to Transfer pursuant to 28 U.S.C. § 1404(a) filed on November 25, 2020. Def.'s Mot., ECF No. 19. Plaintiff WSOU Investments, LLC, d/b/a Brazos Licensing and Development filed its Response in opposition on April 23, 2021. Pl.'s Resp., ECF No. 46. Juniper filed its Reply on May 24, 2021. Def.'s Reply, ECF No. 66. After considering the Motion, the briefs filed by the Parties[1], and the applicable law, the Court **DENIES** the Motion.

### I. INTRODUCTION

A party seeking a transfer to an allegedly more convenient forum carries a significant burden. *In re Volkswagen, Inc.*, 545 F.3d 304, 314 n. 10 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("[A] plaintiff's choice of venue … places a *significant burden* on the movant to show good cause for the transfer.") (emphasis added). Juniper does not contest that venue is proper in the Western District of Texas ("WDTX"). *See generally,* Def.'s Mot. at 5. Juniper moved to have this case transferred to the Northern District of California ("NDCA").

---

[1] Although Brazos filed a sur-reply (ECF No. 72) to Juniper's Reply, Brazos did not seek leave from this Court to do so in accordance with the Court's standing orders requiring leave of Court prior to filing a sur-reply. Accordingly, the Court strikes Brazos's Sur-Reply and will not consider the Sur-Reply in its analysis of the Motion to Transfer.

cite. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly more convenient*. *Volkswagen II*, 545 F.3d at 315 (stating that when the movant fails to demonstrate that the transferee venue is "*clearly* more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected") (emphasis added). This Court finds that Juniper has failed to meet its significant burden to show that transfer is warranted.

## II. BACKGROUND

Defendant Juniper is a Delaware corporation with its headquarters and principal place of business in Sunnyvale, California. Def.'s Mot. at 3. Juniper "designs, develops, and sells products and services for high-performance networks" which encompass "routing, switching, and security technologies." Pl.'s Compl. at ¶ 10. Most of Juniper's employees work at its headquarters in California. Def.'s Mot. at 3. A sizeable number of Juniper employees live in or work in Texas, and forty of these employees live in the WDTX. Pl.'s Resp. at 3. Juniper has three offices in Texas, including one in Austin that lies within the WDTX. *Id.* This Austin office exists to service a startup company that Juniper acquired which has no connection with the products accused of infringement in these cases. Def.'s Mot. at 13.

Plaintiff Brazos is a Delaware corporation with its headquarters and principal place of business in Waco, Texas. Pl.'s Compl. at ¶ 2. Brazos offers services to patent holders such as license negotiation and management of infringement litigation.[2]

On September 8, 2020, Brazos filed this patent infringement suit along with four others against Juniper.[3] Brazos filed two more patent infringement suits against Juniper on October 1,

---

[2]*What We Do*, Brazos Licensing & Development, https://www.brazoslicensing.com/what-we-do (last visited Jun. 14, 2021).
[3]Case nos. 6:20-cv-00812, -00813, -00814, -00815, and -00816.

2020.[4] Each of these suits asserts infringement of one patent per suit,[5] and Brazos claims that these patents have been collectively infringed by a broad range of products marketed and sold by Juniper.[6] Def.'s Mot. at 3. One of these cases[7] was dismissed by joint stipulation of the parties on March 23, 2021. Pl.'s Resp. at n.2.

On November 25, 2020, Juniper filed this Motion to Transfer Venue under 28 U.S.C. § 1404(a). Def.'s Mot. at 1. For the Court's and the Parties' convenience, Juniper's single motion covers all six of the remaining pending cases between Brazos and Juniper. *See id.* at n.1. Juniper requests that the Court transfer all six of the cases from the Western District of Texas to the Northern District of California. *Id*. at 1.

### III. LEGAL STANDARD

For the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The party moving for transfer carries the burden of showing *good cause*. *Volkswagen II*, 545 F.3d at 314 ("When viewed in the context of § 1404(a), to show *good cause* means that a moving party, in order to

---

[4] Case nos. 6:20-cv-00902 and -00903.
[5] Case no. 6:20-cv-00812 asserts infringement of U.S. Patent No. 7,382,781; Case no. 6:20-cv-00813 asserts infringement of U.S. Patent No. 7,483,998; Case no. 6:20-cv-00814 asserts infringement of U.S. Patent No. 7,518,990; Case no. 6:20-cv-00815 asserts infringement of U.S. Patent No. 7,596,140; Case no. 6:20-cv-00902 asserts infringement of U.S. Patent No. 7,620,273; Case no. 6:20-cv-00903 asserts infringement of U.S. Patent No. 8,284,656.
[6] These include Juniper's QFX Series Switches, EX Series Switches, MX Series 5G Universal Routing Platform, NFX Series Network Services Platform, SRX Series Services Gateways, WANDLIP/MPLSView, ACX Series Universal Metro Routers, Packet Optical products, Packet Optical Transport products, and PTX 3000 and PTX 5000 Series routers.
[7] Case no. 6:20-cv-00816.

support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (emphasis added) (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. If so, in the Fifth Circuit, "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 313 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not *clearly more convenient* than the venue

4

chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. Under a § 1404(a) motion to transfer, "the moving party bears a *heavy burden* of demonstrating why the factors 'clearly favor such a change.'" *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 664 (E.D. Tex. 2007) (citing *In re Triton Ltd. Sec. Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999)) (emphasis added).

## IV. ANALYSIS

The threshold determination for a U.S.C. § 1404(a) analysis is "whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312. As a preliminary matter, neither party contests the fact that venue is proper in the NDCA and that this case could have been filed there. Def.'s Mot. at 6; *see generally* Pl.'s Resp. The Court agrees with the Parties that these actions could have been brought in the NDCA.

**A. The Private Interest Factors Weigh in Favor of Transfer.**

*i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

Juniper first points out that the majority of the physical and documentary evidence relating to the cases at hand, as well as the relevant source code, is stored at its headquarters in California. Def.'s Mot. at 9. This is also the case for Juniper's technical documents as well as marketing and sales information; Juniper claims that none of this documentary evidence is present in Texas. *Id.* Juniper also argues that nearly all of its relevant witnesses are located in the

5

NDCA and that this alone tips the balance in favor of transfer. *Id.* Juniper asserts that if Brazos has any relevant evidence, there is no reason to think that it will be found in Texas. *Id.* Even if Brazos could identify relevant documents kept in the WDTX, it would not outweigh the fact that Juniper's documents are overwhelmingly in the NDCA. *Id.* at 10. Accordingly, Juniper argues that this factor strongly supports transfer. *Id.*

Brazos states that Juniper has admitted that all of its relevant documents are stored electronically on servers located in several states and countries outside of California. Pl.'s Resp. at 4. Because of this, Brazos claims that Juniper cannot show that access to this proof is clearly more convenient in the NDCA. *Id.* Brazos also argues that Juniper does not describe the documents that would be more readily accessible in the NDCA with sufficient specificity, and that vague references to documents in California are insufficient to support transfer. *Id.* at 5. Brazos notes that the support for Juniper's argument comes solely from a declaration statement which relies entirely upon secondhand information received from Juniper legal counsel. *Id.* Furthermore, Brazos points to Juniper's confirmation that all of the relevant documents and source code can be accessed globally by any person with sufficient permissions, and that Juniper could therefore provide such evidence with little effort in either the NDCA or the WDTX. *Id.* at 6. Brazos dismisses Juniper's reference to the location of Juniper's employees with regard to this factor, as this factor relates solely to the ease of access of non-witness evidence. *Id.* at 7. Finally, Brazos asserts that its sources of proof are located in Waco, with physical documents stored in its Waco office and electronic documents stored on servers maintained and managed by a local Waco business. *Id.* As a result, Brazos argues that this factor does not favor transfer. *Id.*

In its Reply, Juniper reiterates that the bulk of the relevant evidence will come from Juniper, and that the majority of its evidence is kept at its Sunnyvale headquarters in the NDCA.

Def.'s Reply at 2. Juniper points out that even if its documents could in theory be accessed from either district, the proper inquiry for this factor focuses on the physical location where documents are stored. *Id.* at 2-3. Juniper also argues that Brazos's assertions that Juniper has servers containing relevant information outside of California ignores controlling law; the movant does not need to show that all of the relevant documents are located in the transferee venue. *Id.* at 3. Regardless, Juniper asserts that there are no relevant documents or evidence in Texas, and that Brazos's purported evidence in its Waco office are public government records which were not located in Brazos's Waco office until after Brazos filed this lawsuit. *Id.* at 3, n.2. Juniper also notes that Brazos does not know where the servers with its electronic documents are located, only that said servers are not located at Brazos's Waco office. *Id.* at n.2.

With regard to Juniper's witnesses, "[t]his Court, in following Federal Circuit precedent, has made clear that witnesses are not sources of proof to be analyzed under this factor. Under this factor, the Court considers only documents and physical evidence." *Kuster v. W. Digital Techs., Inc.*, 2021 WL 466147, at *2 (W.D. Tex. Feb. 9, 2021); *see In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). As to the location of relevant Juniper documents, Juniper states that the "majority of its documentary evidence relevant to the Accused Products" is stored at Juniper's California headquarters." Martinez Decl., ECF No. 19-1 at ¶12. Given that Juniper has admitted to having information stored in many other locations across the world, the Court finds that Juniper has not sufficiently differentiated which documents would be more readily available in the NDCA compared to the WDTX. *See* Martinez Dep., ECF No. 46-3 at 33:23–34:9, 36:8–37:4 (stating that relevant information is stored on servers in Massachusetts, New Jersey, China, and India as well as California). Vague assertions that the "majority" of the evidence relating to the accused devices is located in California invites this court to speculate on where particular

pieces of evidence are located. *See Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013) (rejecting a similar argument that "virtually all" of the defendant's documents relating to research, design and development were located in the transferee venue as too vague to consider); *see also In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014) (denying mandamus on appeal and determining that district court did not abuse its discretion in its finding that the evidence before it was too general to be considered).

On the other end, Brazos does not describe what specific documents are physically located at its Waco office and has stated that these documents were not located at its Waco office ▮▮▮▮▮▮[8]▮▮▮▮▮▮. *See* Pl.'s Resp. at 7; *See* Def.'s Reply at n.2. Because the relevant time for any venue analysis is the time of filing of the complaint, these documents cannot be considered for this factor. *See eRoad Ltd. v. PerDiemCo LLC*, 2019 WL 10303654, at *6 (W.D. Tex. Sept. 19, 2019). And while it asserts that its electronic information is managed by a Waco-based company, Brazos does not identify whether the servers that contain said information are located within the WDTX. *Id.* In light of the generality and vague nature of the location and relevance of the sources of proof for both parties, the Court will consider this factor to be neutral.

### ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

"In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within the state

---

[8] Unless Brazos's documents arrived at its Waco office exactly on October 1st—prior to the filing of Case Nos. 6:20-cv-00902 and -00903—these documents would not have been present in Waco before any of the cases under consideration were filed.

where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Moreover, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Juniper argues that this factor favors transfer. Def.'s Mot. at 10. It points to prior art witnesses located in the NDCA and asserts that the ability of courts in that District to subpoena those prior art witnesses pushes this factor towards transfer. *Id.*

Brazos first points out that Juniper's prior art witnesses have not been identified by Juniper as "unwilling" witnesses. Pl.'s Resp. at 7. Because Juniper has not alleged or shown any potential witnesses that would be unwilling to testify, Brazos argues that this factor weighs against transfer. *Id.* at 8. Even if these witnesses were counted under this factor, prior art witnesses are not afforded much weight as they are very unlikely to testify. *Id.* Brazos also notes that three of the prior art witnesses are entities that have locations within the subpoena power of this Court, and therefore would weigh against transfer. *Id.* Brazos also claims that two non-party witnesses slightly more than 100 miles from this Court would be subject to subpoena because Brazos has agreed to pay their expenses to testify. *Id.* As a result, Brazos argues that this factor weighs against transfer. *Id.* at 9.

Juniper asserts in its Reply that Brazos has not identified any unwilling witnesses that are subject to this Court's subpoena power, and that this factor continues to favor transfer due to Juniper's prior art witnesses being located in the NDCA. Def.'s Reply at 3.

After considering the Parties' arguments, this Court has determined that this factor weighs slightly against transfer. The Court notes that neither Juniper nor Brazos have presented evidence nor even alleged that any of the named witnesses are unwilling witnesses. This factor

carries little weight when neither party claims any witnesses would be unwilling to testify. *Turner v. Cincinnati Ins. Co.*, 2020 WL 210809, at *3 (W.D. Tex. Jan. 14, 2020). Furthermore, in the absence of any alleged unwilling witnesses, this factor weighs slightly against transfer. *Id.*

### iii. The Cost of Attendance for Willing Witnesses.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, 2017 WL 4155236, at *5 (E.D. Tex. Sep. 19, 2017). The convenience of party witnesses is given little weight. *Fintiv*, 2019 WL 4743678, at *6. The Fifth Circuit's 100-mile rule states that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue § 1404(a) is more than 100 miles, the factor of inconvenience of witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen I*, 371 F.3d at 204–05). As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in a 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. *Id.* Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor. *Id.*

Juniper argues that due to the large number of relevant witnesses in the NDCA and the lack of such witnesses in the WDTX, this factor weighs strongly in favor of transfer. Def.'s Mot. at 8. Juniper specifically identifies several of its own employees knowledgeable about the design, development, testing, and/or operation of the allegedly infringing devices that work and reside in the NDCA. *Id.* at 3. Several party witnesses with relevant information about marketing and sales

10

are also located in the NDCA. *Id.* at 3–4. Juniper has also identified four non-party prior art witnesses in the NDCA. *See id.* at 8; *see also* Pl.'s Resp. at n.10. There are some relevant party witnesses that are located in New Jersey or India; however, Juniper is not aware of any employees in Texas with relevant knowledge of the accused products. Def.'s Mot. at 4, 7. Juniper asserts that there are no relevant witnesses in the WDTX, and that, therefore, this factor strongly favors transfer. *Id.* at 8.

Brazos first notes that Juniper's non-party prior art witnesses should not be included as part of the analysis of this factor, as they were also included in Juniper's argument for the compulsory process factor. Pl.'s Resp. at n.13. Brazos further argues that even if these witnesses are included under this factor, prior art witnesses are given little weight because they are unlikely to testify. *Id.* Brazos also notes that most of these witnesses have business locations in the WDTX; three of the four prior art witnesses—Futurewei Technologies, Newisys, and IBM—have locations within 100 miles of the Waco Courthouse and are subject to this Court's power of subpoena. *Id.* Regarding Juniper's party witnesses, Brazos first points out that the convenience of party witnesses is given little weight under this factor. *Id.* at 9. Brazos further argues that many of Juniper's identified employees with relevant knowledge are located outside of California and that these employees would be at least slightly more inconvenienced traveling to the NDCA than the WDTX. *Id.* at 11. Brazos also argues that there is at least one specific Juniper employee in Dallas, Texas with relevant information, and that some of the 40 Juniper employees and 206 third-party resellers and/or distributors located in this district may also have relevant information. *Id.* Finally, Brazos argues that it has at least one relevant witness in Waco—its Managing Director of Business Development, Matt Hogan—for whom the WDTX would be more convenient than the NDCA. *Id.* at 11–12. Brazos also says that two of its other employees

11

knowledgeable about Brazos's licensing practices would be willing to travel to the WDTX and that doing so would not be inconvenient for them. *Id.* at 12. As a result, Brazos argues that this factor does not favor transfer. *Id.*

In its Reply, Juniper points out that the relevant inquiry is not whether all of the relevant witnesses live in the transferee district, but whether a "substantial number" do. Def.'s Reply at 1. Juniper argues that Brazos was unable to point to any specific Juniper witnesses with relevant information in the WDTX, instead only speculating that the Texas employees and third parties "may have" relevant information. *Id.* Juniper further argues that the Juniper employees that are based in neither Texas nor California should be given little weight, because these employees will likely have to leave home for an extended period regardless of where the case is tried. *Id.* Finally, Juniper argues that Mr. Hogan is not responsible for the management or licensing of Brazos's patents, and that Brazos therefore has no relevant witnesses in Waco. *Id.* at 2. The Brazos employees most knowledgeable about Brazos's patent portfolio and licensing are in California, and statements about said employees' willingness to travel to the WDTX are not persuasive. *Id.* Therefore, Juniper reasserts that witness convenience strongly favors transfer. *Id.*

This Court determines that this factor weighs slightly in favor of transfer. With regard to Juniper's prior art witnesses, the Court first notes that Juniper does not classify these witnesses as either willing or unwilling to testify. Juniper improperly refers to these prior art witnesses in its arguments for this factor as well as the compulsory process factor, double dipping and overstating the witnesses significance in the transfer analysis. Def.'s Mot. at 8, 10. Nevertheless, analyzing these witnesses under the willing witness convenience factor, prior art witnesses are accorded little weight in the analysis as they are generally considered unlikely to testify. *Fintiv*, 2019 WL 4743678, at *5. And as Brazos has noted, three of these four prior art witnesses—

Futurewei Technologies, Newisys, and IBM—are entities with a presence in the WDTX. Pl.'s Resp. at n.13. Accordingly, the Court does not find these particular witnesses to weigh for or against transfer.

This leaves the Court to consider the significance of the party witnesses. As already noted, party witnesses are generally accorded little weight as they can be compelled by the parties to testify. *See Fintiv*, 2019 WL 4743678, at *5. While Brazos is correct in stating that a substantial number of relevant Juniper witnesses live outside of the NDCA, these witnesses themselves do not weigh strongly against transfer. Fifth Circuit precedent states that the inconvenience to willing witnesses increases in direct relation to the additional distance to be traveled beyond 100 miles. *Volkswagen I*, 371 F.3d at 204–05; *see Zenith Elecs. LLC v. Sony Corp.*, 2011 WL 13217851, at *7 (E.D. Tex. Apr. 25, 2011) ("The '100 mile rule' generally favors transfer … if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue."); *Elbit Sys. Land & C4i Ltd. v. Hughes Network Sys., LLC*, 2017 WL 4693513, at *9 (E.D. Tex. July 19, 2017) ("Transfer is favored if the transferee venue is a shorter average distance from witnesses as compared to the transferor venue."); *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, 2012 WL 12836668, at *2 (E.D. Tex. Feb. 10, 2012) (finding that Nebraska would be "far more convenient" for Canadian witnesses than Texas due to the additional 700 miles that witnesses would otherwise be required to travel); *Krispy Krunchy Foods LLC v. Jenna Mktg. LLC*, 2021 WL 1916151, at *4 (W.D. La. Apr. 16, 2021) (finding that venue in transferee district was more convenient because of its "proximity to all of [movant's] … witnesses" relative to transferor district).

A witness traveling from Bangalore would need to travel approximately 9300 miles to reach Waco as opposed to 8700 miles to reach San Jose, while a witness traveling from the

13

United Kingdom would need to travel 4800 miles to reach Waco versus 5400 miles to reach San Jose. Therefore, by applying the Fifth Circuit's 100-mile rule, the NDCA is slightly more convenient for the Bangalore witnesses, while the WDTX is slightly more convenient for the United Kingdom witness. Witnesses traveling from New Jersey and Massachusetts would need to travel approximately 1000 miles further to reach the NDCA compared to the WDTX, making the WDTX slightly more convenient for these witnesses. Given that the number of potential Bangalore witnesses is equal to the combined potential witnesses from the United Kingdom, New Jersey, and Massachusetts, the Court finds that as a whole these witnesses do not weigh for or against transfer. *See* Def.'s Resps. to Pl.'s Interrogs., ECF No. 46-4 at 11–13.

With regard to the two Brazos employees located in ▮▮▮▮▮▮, these witnesses are not located in the NDCA, but rather in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[9] Furthermore, Brazos maintains its headquarters and singular office in Waco where these employees could work while a trial is ongoing. The convenience afforded these employees to potentially continue working during trial weighs against the increased inconvenience that these witnesses would suffer by traveling a greater distance to the WDTX compared to the NDCA. *See Koss Corp. v. Apple Inc.*, Case no. 6:20-cv-00665, ECF No. 71 at 19 (W.D. Tex. Apr. 22, 2021) (order denying motion to transfer where the plaintiff's facility in transferor venue "greatly minimizes the time that [plaintiff's] employees are removed from their regular work responsibilities"). As a result, the Court does not find that these employees would be significantly more inconvenienced traveling to the WDTX relative to the NDCA. In any event, the convenience of these two employees is entitled to little weight given their status as party witnesses.

Thus, the analysis depends primarily upon Juniper's party witnesses located at its

---

[9] These two employees—Brazos's President Stuart Shanus and CEO Craig Etchegoyen—have residences in ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮, respectively. Hogan Dep., ECF No. 62-2 at 17:14–22, 30:14–31:7.

California headquarters as well as Brazos's party witnesses located in Texas. Juniper names eleven specific party witnesses located in the NDCA[10], whereas Brazos names one specific party witness located in the WDTX.[11] Def.'s Reply at 2; *See* Pl.'s Resp. at 12. The Court assumes that no more than a few party witnesses will testify live at trial, and therefore long lists of potential party witnesses—such as Juniper's—are not persuasive with regard to this factor. *Fintiv*, 2019 WL 4743678, at *6. Juniper contends that Brazos's Managing Director of Business Development, Matt Hogan, is not a relevant witness to this case because he "is not responsible for the management or licensing of Brazos's patents." Def.'s Reply at 2. While it is true that Mr. Hogan's duties might make his testimony less significant in the grand scheme than the testimony of those who do manage and license Brazos's patents, the Court is not convinced that Mr. Hogan's testimony would be wholly irrelevant. Where potentially relevant witnesses are identified, district courts "need not evaluate the significance of the identified witnesses' testimony." *DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *In re Genentech,* 566 F.3d at 1343–44).

While it is clear that a number of witnesses are located in the NDCA, these are all party witnesses employed by Juniper and it is unlikely that all of them will testify. Given that these party witnesses are entitled to little weight and given the presence of at least one Brazos party witness in the WDTX, the Court finds that this factor weighs only slightly in favor of transfer.

*iv. Other Practical Considerations*

In considering a transfer motion, the Court considers "all other practical problems that

---

[10]These employees include Mike Marcellin (Chief Marketing Officer); Shelly Gupta (Vice President of Finance); Brett Talbert (Senior Manager, Licensing Operations); Rahul Ramachandran (Product Manager Staff); Sanjeev Mahajan (Senior Staff Engineer); Raveendra Torvi (Senior Manager of Software Engineering); Amit Bhardwaj (Senior Director, Product Management); Jon Anderson (Director, Optical Hardware Engineering); Steven Alleston (Director, Optical System Design); Selvakumar Sivaraj (Distinguished Engineer – Software); and Prince Jose (Product Manager Senior Staff). Def.'s Resps. to Pl.'s Interrogs. at 11–13.

[11]Although Brazos mentions its in-house attorney as well, it is unclear whether she is presented as a potential witness. *See* Pl.'s Resp. at 12.

make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

Juniper argues that there are no other practical considerations that weigh in favor of keeping the case in the WDTX and that this factor is neutral. Def.'s Mot. at 10. Juniper contends that the co-pendency of Brazos's multiple suits against Juniper in this District do not weigh against transfer, and all of the suits could be transferred together to eliminate efficiency concerns. *Id.* at 10-11.

Brazos argues that this factor weighs against transfer. Pl.'s Resp. at 13. Brazos asserts that transfer would cause undue delay and duplication of efforts due to the progress in litigation that has occurred since filing its six cases. *Id.* Brazos also notes that the NDCA has a more congested docket than the WDTX. *Id.* Brazos points to several IPR petitions that Juniper has filed against patents at issue in these cases, and contends that because the NDCA is more likely to grant stays pending IPRs than this court, transfer would delay resolution of these cases. *Id.*

Juniper responds that every substantive step taken during this litigation has occurred after Juniper moved for transfer, including the IPRs that Juniper has filed. Def.'s Reply at 4. Juniper argues that to be in accord with Federal Circuit precedent, this Court must disregard these post-motion steps. *Id.*

The Court finds this factor to be neutral. As the Federal Circuit has made clear, substantive steps that have occurred in litigation following the filing of a transfer motion should not be considered in the analysis of this factor. *In re Apple*, 979 F.3d at 1343. This includes the IPR petitions that Juniper has filed following the motion to transfer. Accordingly, there are no reasons to give this factor weight for or against transfer.

**B. The Public Interest Factors Weigh Against Transfer.**

*i. Administrative Difficulties Flowing from Court Congestion*

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

Juniper argues that this Court is slightly more congested than the NDCA, or at least is not less so. Def.'s Mot. at 11–12. Juniper points to a slightly longer average time to trial in civil cases for this Court compared to the average in the NDCA in the year 2019. *Id.* at 12. According to Juniper, this somewhat higher level of congestion in the WDTX should favor transfer. *Id.*

Brazos responds with the contention that court congestion weighs against transfer. Pl.'s Resp. at 14. Brazos argues that these cases are scheduled for trial within 21-22 months of filing—in accordance with a median time to trial in the WDTX of 20.4 months—whereas the median time to trial for the NDCA is 44.5 months based on the most recent statistics from 2020. *Id.* Brazos further notes that these statistics do not account for the time that would be lost by transferring these cases and establishing new schedules with a new presiding judge. *Id.*

Juniper disputes Brazos's argument that this factor weighs against transfer based on the set trial date. Def.'s Reply at 4. Juniper notes that the Federal Circuit has rejected the use of an early trial date alone to conclude differences in relative congestion between separate courts. *Id.*

The Court finds that this factor weighs against transfer. Although Juniper is correct that a set trial date alone is insufficient for a determination of relative congestion, Brazos's argument rests primarily on the most recently available statistics for median times to trial for both districts. *Compare In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020) (stating that district court erred in analysis of this factor when it "relied *solely* on its perceived ability to more quickly schedule a trial") (emphasis added). The Court finds Brazos's data to be decisive, despite Juniper's attempt to use outdated statistics to align this factor in its favor.[12] These differences in

---

[12] The statistics cited by Brazos were published on September 30, 2020 (prior to the filing of two of the cases being considered under Juniper's Motion), and were clearly available to Juniper at the time it filed its motion to transfer on

17

median times to trial are significant enough for this factor to weigh against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

There is "a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Piper Aircraft*, 454 U.S. 235, 260 (1981).

Juniper argues that this factor weighs heavily in favor of transfer, because there are significant connections between the NDCA and the events that gave rise to the cases at hand. Def.'s Mot. at 12. Specifically, Juniper asserts that this factor favors transfer because Juniper researched, designed, and developed the relevant allegedly infringing devices in the NDCA, and Juniper maintains its principal place of business there. *Id.* at 13. By contrast, Juniper contends that the WDTX has no meaningful connection to these cases. *Id.* Juniper's activities in this district are limited to the presence of a few employees with no relevant relation to the accused devices, and its office in Austin has no connection to the accused devices either. *Id.*

Brazos argues that factor weighs against transfer and that the WDTX does have a significant interest in this dispute. Pl.'s Resp. at 14-15. Brazos points to the fact that Brazos is headquartered in Waco and has other significant connections to the Waco community. *Id.* Brazos also contends that Juniper has strong ties to the WDTX through its Austin office and employees, as well as its sale and service of its accused products within the WDTX in the last two years. *Id.* at 15.

Juniper reiterates that this factor favors transfer where the transferee district is the area where the research, design, and development of the accused devices occurred. Def.'s Reply at 4. Juniper argues that the sale of its products in Texas does not create a local interest here. *Id.* at 4-5. Juniper further argues that Brazos's ties to the WDTX are not relevant to this factor and that

November 25, 2020.

even if they were, those ties are not significant. *Id.* at 5, n.4. Finally, Juniper asserts that its Austin office—which has closed as of March 31, 2021— is not sufficient to create a local interest and that Juniper's presence within the district is "small and shrinking." *Id* at 5.

The Court finds that this factor weighs against transfer. Juniper is correct in its assertion that the most relevant consideration for this factor is the location of the events giving rise to these suits, which in patent-related cases is where the development of the allegedly infringing products occurred. *See In re Apple*, 979 F.3d at 1345. However, Juniper errs in its assumption that this particular interest outweighs all other local interests to the extent that this factor would strongly support transfer. Juniper has not shown that the development of the accused products took place entirely within the NDCA. *See* Martinez Dep. at 36:12–37:4 (confirming that development of some of the accused products occurred in both China and New Jersey). In addition, Juniper maintains a substantial presence in both the WDTX and Texas as a whole through its Texas offices, and it leased an office in Austin both at the time of the filing of this lawsuit as well as the filing of the motion to transfer. As the relevant time for any venue analysis is the time of filing the complaint, this Austin office is appropriate to consider under this factor and is enough to create a local interest in Juniper's activities in the WDTX. *See eRoad*, 2019 WL 10303654, at *6; *see also Kuster*, 2021 WL 466147, at *8 (finding that the presence of defendant's facilities, employees, and sales of accused products in both transferor and transferee districts rendered this factor neutral).

By contrast, neither Brazos nor Juniper has asserted *any* connection between Brazos and the NDCA.[13] *See* Def.'s Mot. at 12–13; *see* Pl.'s Resp. at 14–15; *see* Pl.'s Reply at 4–5. Brazos is both headquartered in and has its principal place of business in Waco, and its ties to the WDTX

---

[13] Although Juniper mentions that Brazos ███████████████████████ outside of the NDCA. *See* Hogan Dep. at 89:6–90:13.

19

are not insignificant. Accordingly, the local interests present in both districts are such that this factor weighs against transfer.

### *iii. Familiarity of the Forum with the Law that will Govern the Case*

Both parties agree that this factor is neutral. Def.'s Mot. at 14; Pl.'s Resp. at 15. The Court also agrees.

### *iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Both parties agree that this factor is neutral. Def.'s Mot. at 14; Pl.'s Resp. at 15. The Court also agrees.

## V. CONCLUSION

For the aforementioned reasons, the Court finds that Juniper did not meet its burden of showing that the Northern District of California is a clearly more convenient forum. Having found that the court congestion, local interest, and compulsory process factors weigh against transfer— with only the convenience of willing witnesses weighing in favor of transfer and all other factors being neutral—the Court finds that Juniper has not met its significant burden to demonstrate that the NDCA is "clearly more convenient." *See Volkswagen II*, 545 F.3d at 314 n.10; *QR Spex*, 507 F.Supp.2d at 664. Therefore, because the Court finds that Juniper has not demonstrated that the NDCA is a clearly more convenient venue than the WDTX, the Court **DENIES** Juniper's Motion to Transfer Venue to the Northern District of California.

SIGNED this 23rd day of June, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE