# United States Court of Appeals for the Federal Circuit

---

**IN RE: JUNIPER NETWORKS, INC.,**
*Petitioner*

---

2021-160

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in Nos. 6:20-cv-00812-ADA, 6:20-cv-00813-ADA, 6:20-cv-00814-ADA, 6:20-cv-00815-ADA, 6:20-cv-00902-ADA, and 6:20-cv-00903-ADA, Judge Alan D. Albright.

---

**ON PETITION**

---

KEVIN P.B. JOHNSON, Quinn Emanuel Urquhart & Sullivan, LLP, Redwood Shores, CA, for petitioner Juniper Networks, Inc. Also represented by TODD MICHAEL BRIGGS.

SARAH GABRIELLE HARTMAN, Brown Rudnick LLP, Irvine, CA, for respondent WSOU Investments LLC. Also represented by DAVID STEIN; ALESSANDRA CARCATERRA MESSING, TIMOTHY J. ROUSSEAU, New York, NY; EDWARD JOSEPH NAUGHTON, Boston, MA.

---

Before LOURIE, BRYSON, and TARANTO, *Circuit Judges*.

PER CURIAM.

**O R D E R**

Juniper Networks, Inc., petitions for a writ of mandamus directing the United States District Court for the Western District of Texas to transfer these six actions to the United States District Court for the Northern District of California. We hold that in denying the motion to transfer the district court committed legal errors that require that we vacate the order denying transfer and direct that the case be transferred under 28 U.S.C. § 1404(a). Accordingly, we grant Juniper's petition and issue the writ of mandamus.

I

In September 2020, WSOU Investments LLC d/b/a Brazos Licensing and Development (referred to here as "Brazos") filed seven complaints in the Waco Division of the Western District of Texas charging Juniper, a Delaware corporation headquartered in Sunnyvale, California, with infringing seven different patents that had been assigned to Brazos.[1]

Juniper moved the district court to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). Juniper argued that "whatever ties Brazos has to this District appear to have been created for the purpose of its patent litigation activities in this District." Juniper pointed out that Brazos "describes itself as a patent assertion entity" and that it "does not seem to conduct any business" from its recently opened office in Waco other than filing patent lawsuits. Juniper further pointed out that the assignment agreement by which Brazos received much of

---

[1]   Brazos dismissed one of the complaints. The remaining six actions are all before the court in this mandamus proceeding. The parties do not suggest that there is any difference among the actions that matter for purposes of this proceeding, so we refer to the six actions collectively as a single case.

its patent portfolio lists a California address for Brazos, and that only one of the officers listed on its website resides in Texas. Two of Brazos's officers, its CEO and its president, reside in California and thus would be subject to compulsory process from a district court in the Northern District of California. App. 133.

Juniper asserted that the Northern District of California was a clearly more convenient forum than the Western District of Texas for litigating this case. In a sworn declaration, Juniper stated that the accused products were primarily designed, developed, marketed, and sold from Juniper's Sunnyvale headquarters within the Northern District of California. App. 151. Juniper noted that potential witnesses who would be expected to testify as to the structure and function of the accused products, as well as the marketing and sale of those products, are located in the Northern District of California, and that Juniper had "identified no employees involved in the design, development, testing, marketing, financing, or sales of the Accused Products who work in Texas." App. 150–51.

In response, Brazos pointed out that it maintains an office in Waco, within the Western District of Texas, where two persons are employed, and that at the time the complaints were filed, Juniper had a small office in Austin, Texas, also within the Western District of Texas.[2]

The district court denied the motion to transfer. The court acknowledged that the six actions could have been brought in the Northern District of California. It then took note of the four private interest factors and four public

---

[2] Juniper represents that its office in Austin, which was directed to servicing customers of a company that Juniper acquired, had no involvement relating to the products at issue in this case. The office was closed shortly after the last of the complaints in this case was filed.

interest factors that have traditionally been identified as the governing factors in determining whether the transferor or the transferee district is the more convenient.

As the court explained, the private factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive. The four public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc); *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004).

With respect to the relative ease of access to sources of proof between the transferor and transferee districts, the court found that Brazos had not identified any relevant documents located at its Waco office that were entitled to any weight in the transfer decision. As for Juniper's documents, the court acknowledged that Juniper represented, without contradiction, that the "majority of the physical and documentary evidence relating to the cases at hand, as well as the relevant source code, is stored at its headquarters in California." However, the court noted that Juniper had admitted that it stored information in other locations as well (but not in Texas). For that reason, the court concluded that Juniper had not "sufficiently differentiated which documents would be more readily available in the [Northern District of California] compared to the [Western District of Texas]." The court therefore found that the

sources-of-proof factor did not weigh either in favor of or against transfer.

With respect to the availability of compulsory process, the court found that neither party had identified any of its proposed witnesses as unwilling witnesses whose appearance would require the issuance of court process. The court stated that the compulsory process factor "carries little weight when neither party claims any witnesses would be unwilling to testify." Curiously, however, the court then determined that the compulsory process factor weighed slightly against transfer.

With respect to the relative convenience of the two forums for potential witnesses, the court noted that Juniper had identified eleven potential party witnesses and four non-party prior-art witnesses, all of whom were located in the Northern District of California, whereas Brazos had identified only one potential witness—one of its employees—who was located in the Western District of Texas. Nonetheless, the district court concluded that the convenience-to-the-witnesses factor weighed only slightly in favor of transfer.

The district court explained that, in its view, the convenience of party witnesses and prior art witnesses is entitled to little weight. Prior art witnesses, the court stated, are generally unlikely to testify, and party witnesses are within the control of the party and can be compelled to testify wherever the trial is conducted. The court added that Brazos's CEO and its president, who would be traveling from California to testify in Texas if the case were not transferred, would not be inconvenienced by the need to travel, because they could work from Brazos's offices during the time that they would be attending the trial. The court found that the convenience factor weighed in favor of transfer, but only slightly so.

As for which district has the greater local interest in the dispute, the district court recognized that the most

Case: 21-168    Document: 15    Page: 6    Filed: 09/24/2021
Case 6:20-cv-01012-ADA    Document 94    Filed 09/24/2021    Page 6 of 15

6                                                                          IN RE: JUNIPER NETWORKS, INC.

relevant consideration bearing on that factor is where the development of the allegedly infringing products occurred. However, the court concluded that the local interest factor weighed against transfer in this case because "Juniper maintains a substantial presence in both the WDTX and Texas as a whole through its Texas offices, and it leased an office in Austin both at the time of the filing of this lawsuit as well as the filing of the motion to transfer." The court also noted that "Brazos is both headquartered in and has its principal place of business in Waco, and its ties to the WDTX are not insignificant." And the court found that "Juniper has not shown that the development of the accused products took place entirely within the NDCA."

Finally, the district court found that the court-congestion factor weighed against transfer because the court in Waco would be likely to reach trial more quickly than would be the case in the Northern District of California. The court found the remaining factors bearing on transfer to be neutral.

Taking into account the weight it had assigned to each of the factors it considered, the district court concluded that Juniper had not established that the Northern District of California was a clearly more convenient forum for this litigation. Accordingly, the court denied the transfer motion.

II

Congress has authorized district courts to transfer civil actions "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). In reviewing transfer decisions, we look to the applicable regional circuit law, in this case the law of the Fifth Circuit, which provides that a motion to transfer venue pursuant to section 1404(a) should be granted if "the movant demonstrates that the transferee venue is clearly more convenient[.]" *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (quoting *Volkswagen*, 545 F.3d at 315).

A district court generally enjoys broad discretion in making the transfer determination. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). However, when a district court's denial of a motion to transfer amounts to a clear abuse of discretion under governing legal standards, we have issued mandamus to overturn the denial of transfer. *See, e.g.*, *In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021); *In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021); *In re Uber Techs., Inc.*, 852 F. App'x 542 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, 848 F. App'x 899 (Fed. Cir. 2021); *In re Adobe Inc.*, 823 F. App'x 929 (Fed. Cir. 2020); *see also Volkswagen*, 545 F.3d at 315. Based on a close study of the record in this case, we conclude that the district court clearly abused its discretion in finding that Juniper failed to make the requisite showing to call for transfer of this case to the Northern District of California.

First, as we have previously explained, the relative convenience for and cost of attendance of witnesses between the two forums is "probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)); *see Apple*, 979 F.3d at 1341; *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). In this instance, the district court clearly erred in not giving sufficient weight to the relative convenience of the transferee forum for the potential witnesses, particularly in light of the striking imbalance in the parties' respective presentations on this factor.

Juniper identified eleven potential party witnesses who were located in the Northern District of California, while Brazos identified only one party witness in the Western District of Texas. The district court attached little weight to the evidence regarding the party witnesses, however. Citing one of its own prior decisions, the court stated

that "party witnesses are generally accorded little weight as they can be compelled by the parties to testify."

The district court also stated that it "assumes that no more than a few party witnesses will testify live at trial" and that in any event "it is unlikely that all of them will testify." The court's assumption that Juniper would not call many party witnesses was not based on any evidence specific to this case. On the other side of the ledger, only one witness was identified as being located in or near the Western District of Texas, and that witness, a Brazos employee, was not alleged to have information relating to the merits of the infringement claims against Juniper.

As for prior-art witnesses, the court stated that they "are accorded little weight in the analysis as they are generally considered unlikely to testify." The court again cited one of its own prior opinions as support for that statement.

We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them. *See Hulu*, 2021 WL 3278194, at *5 (rejecting district court's position that a party's ability to compel the testimony of its employees supported giving the location of those witnesses little or no weight under a willing witness factor). We have also rejected the district court's categorical assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions. *See Samsung*, 2 F.4th at 1379; *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020); *In re DISH Network, L.L.C.*, 856 F. App'x 310, 311 (Fed. Cir. 2021); *Uber*, 852 F. App'x at 543. In *Hulu*, we also disapproved of the district court's discounting all of Hulu's prior art witnesses; we stated that the "categorical rejection of Hulu's witnesses is entirely untethered to the facts of this case and therefore was an abuse of discretion." 2021 WL 3278194, at *3.

The force of Juniper's showing as to the inconvenience and cost entailed in requiring witnesses to testify at a remote forum is particularly strong in light of the very weak showing on that issue made by Brazos. As we explained in *Samsung*, "[e]ven if not all witnesses testify, with nothing on the other side of the ledger, the factor strongly favors transfer." *Samsung*, 2 F.4th at 1379; *see also Hulu*, 2021 WL 3278194, at *5.

Second, the district court erred in applying the local interest factor. The court acknowledged that the events forming the basis for Brazos's infringement claims occurred mainly in the Northern District of California; none occurred in the Western District of Texas. That is sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer. *See Samsung*, 2 F.4th at 1380 (transfer favored because most, even if not all, of the underlying research, design, and development of the accused products centered on activity within the transferee venue); *Acer*, 626 F.3d at 1256 (transfer favored because "[t]he company asserting harm and many of the companies alleged to cause that harm are all residents of that district, as are the inventor and patent prosecuting attorneys whose work may be questioned at trial").

The district court's conclusion that the local interest factor weighed against transfer was premised on the fact that Juniper had leased a small office in Austin at the time the motion to transfer was filed. But as the district court acknowledged, Juniper's office in Austin existed "to service a startup company that Juniper acquired which has no connection with the products accused of infringement in these cases."

Juniper's general presence in the Western District of Texas is not enough to establish a local interest in that district comparable to that of the Northern District of California. As we explained in *In re Apple*, this factor "most notably regards not merely the parties' significant

connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" 979 F.3d at 1345 (quoting *Acer*, 626 F.3d at 1256) (emphasis in *Apple*). In that case, we held that the district court "misapplied the law to the facts" when it "heavily weigh[ed]" the defendant's "general contacts with the forum that are untethered to the lawsuit." *Id.*; *see also In re Google LLC,* 855 F. App'x 767, 768 (Fed. Cir. 2021) ("Google's mere presence in the Western District of Texas insofar as it is not tethered to the events underlying the litigation is not entitled to weight in analyzing the local interest factor in this case."); *DISH Network*, 856 F. App'x at 311; *Samsung*, 2 F.4th at 1380.

Aside from Juniper's general presence in Austin, the district court relied on the fact that Brazos was incorporated in Texas and maintained its principal office in Waco, within the Western District of Texas. But Brazos's status as a Waco-based entity is not entitled to significant weight. Brazos's presence in Waco appears to be both recent and relatively insubstantial. The office was established only a few months before the complaints against Juniper were filed, and the activities of the office are largely tied to bringing lawsuits in that court. Brazos has only two employees who work from Waco, one of whom is its in-house attorney responsible for litigation. The principal officers of Brazos are located in California.

We have noted in other mandamus cases that little or no weight should be accorded to a party's "recent and ephemeral" presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation. *See In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011); *see also Samsung*, 2 F.4th at 1378; *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (party shared office space in the transferor district; its presence in Texas "appears to be recent, ephemeral, and an artifact of litigation"); *In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir. 2010) ("[T]he status

of Personal Audio, LLC, as a Texas corporation is not entitled to significant weight, inasmuch as the company's presence in Texas appears to be both recent and ephemeral—its office is apparently the office of its Texas litigation counsel, and it appears not to have any employees in Texas.").

Brazos's presence in the Western District of Texas is insubstantial compared to the presence of Juniper in the Northern District of California. *See Microsoft*, 630 F.3d at 1364. Moreover, it appears that the relationship between the Texas forum and Brazos is merely the product of pursuing litigation in a preferred forum and is entitled to little weight. *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (characterizing pre-litigation transfer of documents as "a fiction which appears to have been created to manipulate the propriety of venue" and concluding that the denial of transfer "ha[d] no legally rational basis" as a result).

Third, the district court erred in its assessment of the availability of sources of proof. Juniper submitted a sworn declaration from its Senior Director of Strategy & Corporate Development attesting to the fact that Juniper "stores the majority of its documentary evidence relevant to the Accused Products . . . at its Sunnyvale headquarters." App. 151. The district court faulted the declaration as not being specific enough, stating that "[v]ague assertions that the 'majority' of the evidence relating to the accused devices is located in California invites this court to speculate on where particular pieces of evidence are located."

That criticism is unjustified. The declaration explained that the evidentiary records maintained at Juniper's Sunnyvale headquarters included "records relating to the research and design of the Accused Products, source code, and marketing, sales, and financial information for the Accused Products." App. 151. Moreover, while Juniper maintains evidence on servers in other locations, it is undisputed that no Juniper evidence relating to the facts of

Case: 21-10812    Document: 15    Page: 12    Filed: 09/24/2021
Case 6:21-cv-00812-ADA   Document 9   Filed 09/24/2021   Page 12 of 15

12                                                IN RE: JUNIPER NETWORKS, INC.

these lawsuits is located in the Western District of Texas. The only evidence that was identified as being located in that district belonged to Brazos. And as to that evidence, the district court found that it was not sufficiently relevant to be entitled to any weight at all.

We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014); *In re HP Inc.*, 826 F. App'x 899, 902 (Fed. Cir. 2020). What matters is the relative access to sources of evidence in the two competing forums. *See Radmax*, 720 F.3d at 288 (noting "the question is *relative* ease of access, not *absolute* ease of access") (emphasis omitted). And while electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant. *See Volkswagen*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."). Based on the difference between the two venues with respect to the sources of proof, the district court should have weighed that factor in favor of transfer.

Fourth, the court erred in finding that the potential need for recourse to compulsory process weighed against transfer. The sole basis for the district court's finding on that factor was the parties' failure to identify any unwilling witnesses who would need to be subpoenaed. That no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California. The district court's analysis of the compulsory process factor confuses "[the] burden of demonstrating that the transferee venue is clearly more convenient with the showing needed for a conclusion that a particular private or public interest factor favors transfer." *Apple*, 979 F.3d at 1340. Taking the court's findings

on their own terms, this factor should be regarded as neutral at most, and certainly not as weighing against transfer. In fact, because Juniper identified several non-party potential witnesses in the Northern District of California, and Brazos identified none in the Western District of Texas, it is puzzling why this factor was not treated as weighing at least slightly in favor of transfer.

Finally, the district court's conclusion that the court-congestion factor weighed against transfer rested solely on Brazos's assertion that the Texas forum had a faster median time to trial than the California forum. The district court, however, did not explain how that difference in the prospective time to trial was caused by an appreciable difference in the degree of docket congestion between the two forums.

We have noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics. *See Samsung*, 2 F.4th at 1380–81; *Apple*, 979 F.3d at 1343–44. The district court based its analysis on scheduled trial dates. But we have held that it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order for setting a trial date. *See Samsung*, 2 F.4th at 1380–81; *Apple*, 979 F.3d at 1344; *see also Hulu,* 2021 WL 3278194, at *5 (determining that the court congestion factor was neutral after considering the close similarity in the number of cases per judgeship and the actual average time to trial in the Western District of Texas and the Northern District of California, and noting that the "consideration that the district court assumed tipped the scales toward denying transfer was its own ability to set an early trial date and bring a case to trial earlier than district-wide statistics would suggest"); *Adobe*, 823 F. App'x at 932 ("The factor concerns whether there is an appreciable difference in docket congestion between the two forums. . . . Nothing

about the court's general ability to set a schedule directly speaks to that issue."); *Samsung*, 2 F.4th at 1380–81.

In any event, we do not regard the relative speed with which this case might be brought to trial in the two districts to be of particular significance. *See Samsung*, 2 F.4th at 1380–81. We have described the court congestion factor as the "most speculative" of the factors bearing of the transfer decision. *Genentech*, 566 F.3d at 1347; *see also Apple*, 979 F.3d at 1344 n.5. And when other relevant factors weigh in favor of transfer or are neutral, "then the speed of the transferee district court should not alone outweigh those other factors." *Genentech*, 566 F.3d at 1347.

Beyond that, Brazos is not engaged in the manufacture or sale of products that practice the asserted patents. Instead, Brazos describes itself as a company that "help[s] inventors and patent owners maximize the full potential of their patents." App. 262. It does not suggest it is in need of a quick resolution because its position in the market is being threatened. Even if the district court's projection of the likely time to trial in the two venues is accurate, the court did not point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight. *See In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011).

In sum, this case is a very close cousin of our recent decisions in *Samsung* and *Hulu*, and the disposition of this case is largely dictated by the disposition of those cases. In those cases, as in this one, the center of gravity of the action was clearly in the transferee districts, not the Western District of Texas. And as in those cases, several of the most important factors bearing on the transfer decision in this case strongly favor the transferee court, and no factor favors retaining the case in the transferor court. *See In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the

transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

Accordingly,

IT IS ORDERED THAT:

The petition is granted. The district court's order denying Juniper's motion to transfer is vacated, and the district court is directed to grant the transfer motion.

                              FOR THE COURT

September 24, 2021            /s/ Peter R. Marksteiner
       Date                   Peter R. Marksteiner
                              Clerk of Court